MOW et al. v. BAKER et al. (No. 1300—5378.)

Commission of Appeals of Texas, Section A. Feb. 5, 1930.

Dibrell & Starnes and J. B. Dibrell, Jr., all of Coleman, for plaintiffs in error.

W. Marcus Weatherred, of Coleman, for defendants in error.

CRITZ, J. This suit was instituted in the district court of Coleman county, Tex., by Mary Mow et al. against Sallie Baker et al., to establish an interest in, and seeking partition of, the estate of W. B. Baker, deceased. Trial in the district court resulted in a judgment against all plaintiffs and for the defendants. The plaintiffs all appealed to the Court of Civil Appeals for the Third District at Austin, which court affirmed the judgment of the district court. 12 S.W.(2d) 1091. The case is now before the Supreme Court on writ of error granted on application of Mary Mow et al.

W. B. Baker, deceased, was married twice. His first wife died intestate in 1891. From this marriage five children were born, two sons and three daughters.

W. B. Baker married the second time in 1892, to Sallie Baker, from which marriage three children were born.

In August, 1907, W. B. Baker and his second wife, Sallie Baker, entered into a settlement, and contract in writing, with all five children of the first marriage. This contract is as follows:

"The State of Texas, County of Coleman:

"Know all men by these presents, that this instrument, this day executed by and between W. B. Baker, Sallie E. Baker, wife of said W. B. Baker, Mrs. Mary Mow, joined by her husband, W. F. Mow, W. T. Baker, Emma Stovall, joined by her husband, John Stovall, Callie Templeton, joined by her husband, Luther Templeton, and George Baker, all of Coleman County, Texas, except the said Emma and

John Stovall, who reside in Stonewall County, and Callie and Luther Templeton, who reside in Fisher County, witnesseth:

"1st. That the said W. B. Baker is the father of said Mary Mow, W. T. Baker, Emma Stovall, Callie Templeton and George Baker, and that Mrs. M. C. Baker, deceased, was the mother of the said children of the said W. B. Baker.

"2nd. That it is the desire of the parties hereto and it is the purpose of this instrument to effect a settlement and division of all rights, title and interest that each of them has to the estate of the said Mrs. M. C. Baker, deceased, and on the part of the said children of the said W. B. Baker, it is their purpose to release all claims that they may have now or may hereafter have to any part of the estate now owned by or heretofore acquired by him, the said W. B. Baker.

"3rd. That in consideration of the sum of $1000.00, to each of them paid, the receipt of which is hereby acknowledged, that the said Mary Mow joined by her husband, the said Emma Stovall, joined by her husband, the said Callie Templeton, joined by her husband, Luther Templeton, W. T. Baker and George Baker, have and by these presents do grant, bargain, and sell and convey unto the said W. B. Baker, all their right, title and interest and claims in and to all property, real and personal and choses in action, belonging to the estate of their deceased mother, the said Mrs. M. C. Baker, or inherited by them as her heirs, and hereby release the said W. B. Baker, from all liability to them, and each of them, upon any claim or claims, right or rights, of action that they or any of them have against him as heirs of their said mother.

"4th. That for the consideration so received by them, as above set out, the said Mary Mow, joined by her husband, Emma Stovall, joined by her husband, and Callie Templeton, joined by her husband, Luther Templeton, W. T. Baker and George Baker, have and by these presents do agree to and accept the sum by each of them received as an advancement in settlement of all interest that they and each of them may and shall be entitled to in the estate of the said W. B. Baker, at the time of and after his death, and agree that in consideration of such advancements that the other persons who would now be or may be at the time of the death of said W. B. Baker, his heirs under the laws of Texas, shall receive all of the estate of the said W. B. Baker at the time of his death and thereafter that he now owns or may hereafter acquire to the exclusion of the children of said W. B. Baker who sign this instrument and their descendants.

"Witness our signatures this the 12th day of August, A. D. 1907."

The above contract was signed, and acknowledged in due form of law by all of the parties, and recorded in the deed records of Coleman county, Tex., on August 23, 1907.

After the execution of the above instrument, but prior to the death of W. B. Baker, Emma Stovall, one of the signers of the above contract, and one of W. B. Baker's daughters by the first marriage, died intestate, and left surviving her four children, Callie Livingston Millard, Cameron Stovall, Florice Stovall, and Cary Stovall, and her husband, John (J. R.) Stovall. These four children are parties plaintiff to this suit.

W. B. Baker died intestate after the death of his daughter, Emma Stovall, and left surviving him, his second wife, Sallie Baker, and his children of both marriages, except the daughter, Emma Stovall, whose four children above named were left.

After W. B. Baker's death, this suit was filed by the two surviving daughters of the first marriage, joined by their husbands, and the four surviving children of Emma Stovall, deceased, against Sallie Baker, the second wife, and her three children, and against the two sons of the first marriage, who had joined in the above contract, but refused to join as plaintiffs in this suit; the purpose of the suit, as above shown, being to establish an interest in and partition the estate of W. B. Baker, deceased.

Sallie Baker, the surviving wife, and her four children by W. B. Baker, claimed title to the entire estate to the exclusion of all of the children of the first marriage, and the children of Emma Stovall, deceased, under and by virtue of the contract above set out.

The two daughters of the first marriage and the children of Emma Stovall, deceased, claim that the above contract does not cut them off from the right to participate in the estate of W. B. Baker, deceased, for various reasons.

The Court of Civil Appeals, in passing on the right of the children of Emma Stovall, deceased, to participate in the estate of their grandfather, holds:

"Powers v. Morrison, 88 Tex. 133, 30 S. W. 851, 28 L. R. A. 521, 53 Am. St. Rep. 738, cited by appellants, holds that grandchildren of an intestate take by substitution, and not through their parents. That case decides how they take, but what they take is defined by the laws of descent and distribution. Article 2577 and article 2578, R. S. 1925, both recite that 'such descendants shall inherit only such portion of said property as the parent through whom they inherit would be entitled to if alive.' If Mrs. Stovall had been alive at the death of her father, she would have inherited nothing from him.

"In view of these statutes and the authorities above cited, we conclude that Mrs. Sto-

vall, when she accepted the advancement made to her by her father in 1907, and released to others her expectancy in his estate, not only precluded herself from any participation therein, but also effectively cut off any right in her children to do so."

█ The first assignment of error, which is pertinent to the holding of the Court of Civil Appeals, with reference to the rights of the children of Emma Stovall, deceased, to participate in the estate of their grandfather, is as follows:

"W. B. Baker, having died intestate, subsequent to the death of his daughter, Emma Stovall, her surviving children, Cameron Stovall, Florice Stovall, Cary Stovall and Callie Livingston Millard, grandchildren of said W. B. Baker, deceased, are entitled to the same share in the estate of W. B. Baker, deceased, that their mother, Emma Stovall, would have been entitled to inherit had she survived her father, and had she not executed a conveyance of her expectancy, because said plaintiffs inherit through and direct from their grandfather and not through their mother."

In our opinion this assignment should be sustained, for the reason that the contract executed by Emma Stovall, deceased, to which her children were not parties, cannot in law, have effect to cut such children off from the rights conferred on them by the statutes of this state. Powers v. Morrison, 88 Tex. 133, 30 S. W. 851, 852, 28 L. R. A. 521, 53 Am. St. Rep. 738.

The statutes directly involved in the above conclusion are articles 2577, 2578, and 3314, R. C. S. of Texas 1925. These articles read as follows:

"When the intestate's children, or brothers and sisters, uncles and aunts, or any other relations of the deceased standing in the first and same degree alone come into the partition, they shall take per capita, namely: by persons; and, when a part of them being dead and a part living, the descendants of those dead have right to partition, such descendants shall inherit only such portion of said property as the parent through whom they inherit would be entitled to if alive."

"Upon the dissolution of the marriage relation by death, all property belonging to the community estate of the husband and wife shall go to the survivor, if there be no child or children of the deceased or their descendants; but if there be a child or children of the deceased, or descendants of such child or children, then the survivor shall be entitled to one-half of said property, and the other half shall pass to such child or children, or their descendants. But such descendants shall inherit only such portion of said property as the parent through whom they inherit would be entitled to if alive."

"When a person dies, leaving a lawful will, all of his estate devised or bequeathed by such will shall vest immediately in the devisees or legatees; and all the estate of such person, not devised or bequeathed, shall vest immediately in his heirs at law; subject however, to the payment of the debts of the testator or intestate, except such as may be exempted by law; and, whenever a person dies intestate, all of his estate shall vest immediately in his heirs at law, but with the exceptions aforesaid shall still be liable and subject in their hands to the payment of the debts of the intestate; but upon the issuance of letters testamentary or of administration upon any such estate, the executor or administrator shall have the right to the possession of the estate as it existed at the death of the testator or intestate, with the exception aforesaid; and he shall recover possession of and hold such estate in trust to be disposed of in accordance with law."

In our opinion the above three articles of our Civil Statutes should be construed together, so as to harmonize them with each other, and at the same time give full force and effect to each.

Article 3314, supra, expressly states, that, "whenever a person dies intestate, all of his estate shall vest immediately in his heirs at law." Under this statute, when W. B. Baker died, his property passed and vested immediately and directly in his own heirs at law. Emma Stovall had preceded her father in death, and therefore never became his heir; but her children who survived her became heirs direct in their own right to the portion their mother would have received had she survived her father and never executed the contract in question. The Court of Civil Appeals holds that the children of Emma Stovall are cut off by their mother's contract. In our opinion the holding is in direct conflict with the holding of the Supreme Court of Powers v. Morrison, supra. It is true that that case involved a debt of the deceased parent of the grandchild to the estate of the grandfather, but the Supreme Court's interpretation and construction of the statutes here involved decides the issues of this case, so far as Emma Stovall's children are concerned, in their favor.

In Powers v. Morrison, the Supreme Court, speaking through Judge Gaines, holds: "The right of succession in this state is the creature of statutory law, and therefore the decision of the question depends upon the construction of our statutes of descent and distribution. When one dies intestate in this state, the statute casts the title of all his property, both real and personal, directly upon his heirs. The provision which applies immediately to the question before us is as follows: 'When the intestate's children, or brothers and sisters, uncles and aunts or

other relations of the deceased standing in the same degree alone come into the partition, they shall take per capita, that is to say, by persons; and when a part of them being dead and a part living, the descendants of those dead have right to partition, and such descendants shall inherit only such portion of said property, as the parent through whom they inherit would be entitled to if alive.' 1 Sayles' Civ. St. art. 1652. We are of the opinion that the purpose of the article was to declare under what circumstances those entitled to the inheritance should take per capita and under what contingencies they should take per stirpes."

Clearly under the above holding the sole and only purpose of the expression in article 2577 and also article 2578, "such descendants shall inherit only such portion of said property, as the parent through whom they inherit would be entitled to if alive," was to declare under what circumstances those entitled to the inheritance should take per capita, and under what contingencies they should take per stirpes. In other words, under our statutes the children of Emma Stovall take directly in their own right and not through any right of their deceased mother. If this be true, it cannot be held by any rule of law that the mother could cut her children off from a valuable property right vested directly in them by law, by a contract that they were not parties to.

In Powers v. Morrison, it was contended that the descendants would inherit only such portion of the estate as the parent through whom they inherited would be entitled to if alive, and that the provision to this effect in the statute defined what the descendants should take by inheritance, and required that the liabilities of the ancestor be offset against the grandchild's inheritance. The Supreme Court expressly rejected this contention in the following language: "We are of the opinion that the purpose of the article was to declare under what circumstances those entitled to the inheritance should take per capita and under what contingencies they should take per stirpes. Such is the intention plainly manifested upon the face of the provision, and we find nothing in the language employed to indicate a further purpose,—that when they take per stirpes, these standing in the remoter degree should be subject to the liabilities of their ancestors."

Judge Caines then further proceeds to demonstrate the correctness of this construction by the use of the following language: "It is clear that, if the intestate had left only grandchildren, the plaintiff in error would have received his full share, although the immediate ancestors of the other grandchildren had owed nothing to the grandfather's estate; and why a different rule should prevail when he takes per stirpes and not per capita we do not see."

We therefore conclude that the contract and release of Emma Stovall above set out does not and cannot have effect in law to cut her children off from inheriting from their grandfather. She released something that never happened, and that never became vested in her. She could not release or sell something that the law vested in her children direct and in their own right.

It seems to be contended by defendants in error that the grandfather, W. B. Baker, made the children of the second marriage his heirs by the contract, and that the contract above set out has this effect in law. We overrule this contention, for the reason that the contract clearly does not have effect in law to hamper W. B. Baker in any way with reference to the rights and properties therein conveyed and released.

Finally we are of the opinion that the contract and release does have effect in law to cut off the children of the first marriage who survived their father, and that the trial court and Court of Civil Appeals were correct in so holding. We see no good purpose in further discussing this question.

We therefore recommend that that part of the judgments of the Court of Civil Appeals and the district court which denies Mary Mow and her husband, W. F. Mow, W. T. Baker, Callie Templeton and husband, Luther Templeton, and George Baker, a right of recovery herein, be affirmed, but that the part of said judgments which deny Callie Livingston Millard, Cameron Stovall, Florice Stovall, and Cary Stovall, all surviving children of Emma Stovall, deceased, the right to participate in the estate of W. B. Baker, deceased, be reversed and remanded to the district court for further proceedings in accordance with this opinion.

CURETON, C. J. The judgments of the district court and Court of Civil Appeals are in part affirmed, and are in part reversed, and, in so far as reversed, the cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.