Patrick A. TURCOTTE et al., Appellants,

v.

Raul TREVINO et al., Appellees.

No. 1029.

Court of Civil Appeals of Texas, Corpus Christi.

Oct. 29, 1976.

Rehearing Denied Dec. 2, 1976.

Dyer, Redford, Burnett, Wray & Woolsey, Corpus Christi, Perkins, Davis, Oden & Warburton, Alice, Baker & Botts, Houston, Rankin, Kern, Martinez & Jones, Inc., McAllen, Day & Day, Fort Worth, Downman, Jones & Granger, Houston, Walter Groce, Corpus Christi, David T. Duncan, Brownsville, Herman I. Little, Jr., Asst. Atty. Gen., Austin, Harry J. Schulz, Three Rivers, Elmore H. Borchers, Wm. C. Wright, Tom N. Goodwin and John E. Fitzgibbon, Laredo, Moises V. Vela, Harlingen, Lee H. Lytton, III, Corpus Christi, Luther H. Soules, III, Oppenheimer, Rosenberg, Kelleher & Wheatley, Inc., San Antonio, for appellees.

Frank W. Nesbitt, Wood, Burney, Nesbitt & Ryan, Corpus Christi, for appellants.

## OPINION

BISSETT, Justice.

Patrick A. Turcotte and Robert A. Turcotte, two of the appellants herein, have

filed a "Motion for Correction of Judgment" of this Court, wherein they correctly observe that no provision was made in the judgment of this Court, made and rendered on August 30, 1976 for a reversal of the trial court's judgment and a remand of the cause to the trial court insofar as they are concerned. Therefore, the opinion of this Court which was handed down on August 30, 1976 is withdrawn and this opinion is substituted therefor.

This is a will contest. This appeal is another installment in the "East Will Litigation", which began in the early 1960's. The controlling issue here presented is whether the appellants, Patrick A. Turcotte, Robert A. Turcotte, Louis Edgar Turcotte, Jr., John W. Turcotte, Joseph A. Turcotte, Elizabeth Stella Turcotte and Elizabeth A. Turcotte, or some of them, have such an interest in the Estate of Sarita K. East, Deceased, that will entitled them, or some of them to contest the will that was made by Sarita K. East (Mrs. East) in 1960. All of the appellants claim to have such an interest as devisees and legatees of Edgar Turcotte, Deceased. The appellants Patrick A. Turcotte and Robert A. Turcotte also claim to be interested persons in the East Estate by virtue of assignments from Robert C. Putegnat and Marie Walker, heirs at law of Mrs. East.

The District Court of Nueces County, Texas, by an interlocutory order made on February 25, 1971, which was incorporated in a final judgment that was signed on June 1, 1971, following a trial before a jury that commenced on June 24, 1970, dismissed these same appellants from the case then pending in that court on the ground that they were estopped as a matter of law to contest the will. Following an appeal, that judgment was reversed by this Court and the cause was remanded for a new trial insofar as it affected the appellants. *Turcotte v. Trevino*, 499 S.W.2d 705 (Tex.Civ. App.—Corpus Christi 1973, writ ref'd, n. r. e.). In the reversal and remand, the District Court was instructed to try all of the procedural questions, including the issues of appellants' interest, separately and in advance of a trial on the issues involving the validity of the will.

Pursuant to those instructions, the District Court of Nueces County, sitting without a jury, conducted such a trial on the issues of appellants' interest in the East Estate properties. Trial commenced on April 7, 1975. A final judgment was rendered on June 26, 1975, which dismissed appellants from the will contest on the ground that they "are not interested parties within the meaning of Section 93 of the 'Texas Probate Code'". The appellants have duly perfected an appeal from that judgment.

The appellant Elizabeth A. Turcotte is the widow of Edgar Turcotte, Deceased, who died testate on March 18, 1963. All of the other appellants are children of Edgar Turcotte, and they, along with Elizabeth A. Turcotte, their mother, are the sole beneficiaries under the will of Edgar Turcotte, Deceased, which will has been probated. Patrick A. Turcotte is the Independent Executor of the Estate of Edgar Turcotte, Deceased.

The only appellees who have filed briefs in this appeal are: Alice National Bank, Independent Executor of the Estate of Sarita K. East, Deceased; the John G. and Marie Stella Kenedy Memorial Foundation; the Attorney General of Texas; Raul Trevino, et al; Lee H. Lytton, Jr. and the Estate of Stella T. Lytton, Deceased; and the Most Reverend Thomas J. Drury, Roman Catholic Bishop of the Diocese of Corpus Christi.

Mrs. Sarita K. East made a will on January 22, 1960 and later executed four codicils thereto, which we refer to as the "1960 will". She also executed a will on December 31, 1948 and a codicil thereto, which we call the "1948 will". She died on February 11, 1961.

The 1960 will, which was admitted to probate on March 6, 1961 by the County Court of Kenedy County, Texas, hereinafter referred to as the "probate court", was contested on July 25, 1962, when Raul Trevino and others, who claimed to be heirs at law of Mrs. East, filed suit to set it aside because of fraud, undue influence and lack of

testamentary capacity. They will henceforth be referred to herein as "plaintiffs". Thereafter, numerous other persons intervened.

The factual background of this case and the long history of the litigation is set out in our previous opinion, *Turcotte v. Trevino*, supra, at pages 708–712. We repeat here only those essential facts, circumstances and legal principles which control the disposition of the instant appeal.

Marie Walker and Robert C. Putegnat, heirs at law of Mrs. East and beneficiaries of her 1948 will, intervened on September 30, 1963. They attacked the 1960 will as being void.

On December 20, 1963, Patrick A. Turcotte, individually and in his capacity as Independent Executor of the Estate of Edgar Turcotte, Deceased, representing the devisees and legatees of Edgar Turcotte, Deceased, and Robert A. Turcotte, individually, intervened. They challenged the 1960 will on substantially the same grounds asserted by the plaintiffs, Raul Trevino, et al.

On December 21, 1963, and on January 20, 1964, Marie Walker and Robert C. Putegnat each executed assignments to Patrick A. Turcotte, whereby each assignor "assigned and conveyed" to Patrick A. Turcotte a total of an undivided ten percent (10%) in and to their rights, titles and interests in and to the East Estate properties. Patrick A. Turcotte then assigned and conveyed an undivided 1/12 of his interest in the properties and rights assigned to him by Walker and Putegnat to his brother, Robert A. Turcotte. All of the assignments were filed in the probate court among the papers in the cause on February 28, 1964. Following the execution and delivery of those assignments, Patrick A. Turcotte and Robert A. Turcotte, amended their pleadings whereby, Patrick A. Turcotte sued in his capacity as Independent Executor of the Estate of Edgar Turcotte, Deceased, and both he and Robert A. Turcotte sued in their capacities as assignees of interests "from legal heirs of Sarita K. East, Deceased". Contained in the pleadings filed by the appellants is an allegation "that they are interested persons under Section 93 of the Probate Code of the State of Texas".

On October 3, 1964, the Bank, the Foundation, the Bishop, the Attorney General and Lytton, filed their "First Amended Motion to Require Proof of Interest" in the probate court, wherein they required all contestants to prove in limine their respective interests in the East Estate. They alleged generally that "some of the contestants and intervenors" have accepted properties and other things of value under and pursuant to the terms of the 1960 will, and that "such parties are now estopped, judicially, equitably or otherwise, from denying the validity of such will". With respect to the appellants, it was particularly averred that Edgar Turcotte, by reason of his actions and conduct during his lifetime, "became estopped and precluded from attacking or contesting the will", and, accordingly, the appellants may not assert any interest adversely to the will "by reason of the estoppel aforesaid", and must renounce any interest adverse to such will, whether "acquired by purchase", or otherwise.

Following a hearing on the question of interest in the probate court which commenced on October 12, 1964, that court, by an order that was signed on November 30, 1964, decreed that certain contestants, including the appellants, were interested parties in the subject matter of the lawsuit.

A trial on the merits of the will contest commenced in the probate court on June 19, 1967. Judgment was signed on March 29, 1968. That judgment set aside the previous judgment, signed on March 6, 1968 that admitted the 1960 will to probate, held that such will was procured by "undue influence", and admitted the 1948 will to probate as the Last Will and Testament of Sarita K. East, Deceased. An appeal was perfected from that judgment to the District Court of Kenedy County, Texas.

The cause was transferred from the District Court of Kenedy County to the District Court of Nueces County. All of the pleadings which had been filed in the probate court were filed in the district court on

May 16, 1969. There, trial commenced on July 20, 1970. For a discussion of that trial, see *Turcotte v. Trevino,* supra.

In the instant appeal, the Bank and the Foundation filed their "Third Amended Motion to Require Proof of Interest" in the district court on March 3, 1975. Lytton and the Attorney General adopted the allegations contained in the aforesaid motion. The Bishop, by supplemental pleading that was filed on March 27, 1975, adopted "all allegations contained in all pleadings and answers heretofore filed herein, now on file herein and hereafter filed herein", but only "insofar, and only to the extent, that such allegations support the issues and defenses raised and the relief sought by this defendant in his said First Amended Motion to Require Proof of Interest." The allegations contained in the several motions and the appellants' responses thereto will be discussed in detail later in this opinion.

The judgment that was signed on June 26, 1975, and from which this appeal emanates, in addition to dismissing appellants for lack of interest in the East Estate, expressly approved the several "settlement agreements" that were made in the years 1971 and 1973 by and between all of the parties (save and except the appellants) to the litigation, set aside the judgment of the probate court of March 29, 1968 which probated the 1948 will of Mrs. East as her Last Will and Testament, and admitted the 1960 will to probate as the Last Will and Testament of the decedent.

The district judge made and filed 64 findings of fact and 25 conclusions of law. It is impracticable to list or discuss in detail such findings and conclusions. In summary, the *court found and concluded that all of the* appellants were estopped to contest the 1960 will because Edgar Turcotte, from whom the appellants received an interest in the East Estate, was estopped to contest the will, and further found and concluded that the assignments were invalid and, therefore did not constitute Patrick A. Turcotte and Robert A. Turcotte "persons interested" in the East Estate.

As was the case in the prior appeal, the record in this appeal is voluminous. The appellants' brief alone comprises 710 pages.

157 points of error are brought up in this appeal. The first 124 points attack the holding by the district court that the assignments from Walker and Putegnat did not clothe Patrick A. Turcotte and Robert A. Turcotte with standing to maintain a contest to the 1960 will. The remaining 33 points challenge the holding that the appellants were not "interested persons" in the East Estate because Edgar Turcotte, their predecessor in interest, was estopped to contest the will.

The record presented by this appeal differs materially from that presented by the prior appeal. Here, the appellants were required by the appellees in a motion in limine which was filed in the district court to prove their interest in a trial on the issue of interest; such a trial was conducted in advance of a trial on the issue of the validity of the will. In the prior appeal, the assignments from Putegnat was not involved, and the interest of the appellants was not questioned in the district court by a motion in limine, and was not effectively challenged until the appellees introduced their evidence on the estoppel issues near the end of the trial on the merits.

Some of the contentions which are made in this appeal were not made in the previous appeal, and vice versa. The type and character of the pleadings, the allegations contained therein, and the theory of the attack in this case are different in many respects from those asserted in the earlier trial in the district court (July, 1970–June, 1971). Because of the disparity in the two records, some of the statements made by this Court in the prior opinion, delivered on September 24, 1973, do not apply to this appeal. The converse is also true.

We are not concerned in this appeal with the 1973 constitutional amendments relating to probate jurisdiction, or any of the new laws enacted pursuant to such amendments. We apply the law to this appeal as the law existed prior to the effective date of the amendments.

Appellants contend, in points 125–129, 131, 132, 135 and 136, that since the appellees did not plead in the probate court: 1) that Edgar Turcotte, at the time he accepted the benefits, had full knowledge of his rights and the material facts affecting the benefits; 2) that he had full knowledge of the fraud and undue influence facts upon which the will contest was predicated; 3) that he had full knowledge of the facts surrounding the execution of the 1960 will, and of his rights thereunder; and, 4) that he had full knowledge of the existence of the 1948 will, and of his rights thereunder, that the district court was without jurisdiction to hear and determine those matters on appeal, and that it was reversible error for the court to overrule appellants' plea to the jurisdiction and their special exceptions. We disagree.

By statutory provision, the category of "persons interested" in an estate includes heirs, devisees, spouses, creditors, and all other persons who have a property right in or a claim against the estate. Tex.Prob. Code Ann. § 3(r). The words "persons interested", as used in the statute, have been construed to mean a person, who, either absolutely or contingently, is entitled to share in the estate. *Pena YVidaurri's Estate v. Bruni,* 156 S.W. 315 (Tex.Civ.App.—San Antonio 1913, writ ref'd); *Alexander v. State,* 115 S.W.2d 1122 (Tex.Civ.App.—Amarillo 1938, writ ref'd). The courts have enlarged such category to include assignees of heirs, devisees or legatees of the decedent whose estate is being administered. See 61 Tex.Jur.2d, Wills § 324, and the cases therein cited.

■ The burden is upon every person who opposes the probate of a will to allege, and if required, to prove, that he has some legally ascertained pecuniary interest, real or prospective, absolute or contingent, which will be impaired or benefitted, or in some manner materially affected by the probate of the will of the decedent. *Logan v. Thomason,* 146 Tex. 37, 202 S.W.2d 212 (1947).

■ It is settled law in this State that a person's interest in an estate, when challenged, is to be determined first in the county court sitting in probate, and on appeal in the district court. *Atkins v. Womble,* 300 S.W.2d 688, 701–702 (Tex.Civ.App.—Dallas 1957, writ ref'd n. r. e.); *Womble v. Atkins,* 160 Tex. 363, 331 S.W.2d 294 (1960).

■ It is also a well established rule that on appeal to the district court from probate matters which have their origin in the county court, the jurisdiction of the district court is appellate only, and the issues which are to be tried de novo in the district court must be confined to the issues that are raised by the pleadings and the evidence in the county court, as the district court has only jurisdiction to revise, declare void or set aside the orders, decrees and judgments of the county court sitting in probate, and no enlargement of the issues that are tried in the probate court will be permitted in the trial in the district court. *Pierce, et al. v. Foreign Mission Board of Southern Baptist Convention et al.,* 235 S.W. 552 (Tex.Comm'n App., 1921, opinion adopted); *Olds v. Traylor,* 180 S.W.2d 511, 518 (Tex.Civ.App.—Waco 1944, writ ref'd); *Mills v. Baird,* 147 S.W.2d 312 (Tex.Civ.App.—Austin 1941, writ ref'd); *Jones v. Jones,* 301 S.W.2d 310 (Tex.Civ.App.—Texarkana 1957, writ ref'd, n. r. e.); *In re Martin's Estate,* 284 S.W.2d 279 (Tex.Civ.App.—El Paso 1955, writ ref'd, n. r. e.); *Chesney v. Chesney,* 270 S.W.2d 464 (Tex.Civ.App.—Dallas 1954, writ ref'd, n. r. e.); *Carr v. Froelich,* 220 S.W. 137 (Tex.Civ.App.—Amarillo 1920, writ ref'd). However, it is a further well-settled rule that the district court has the power to permit necessary amendments to pleadings which were filed in the probate court so long as the amendments do not change the general question raised by the pleadings in the probate court or the character of the proceedings had in that court. *Drew v. Jarvis,* 110 Tex. 136, 216 S.W. 618 (1919); *Saros v. Strickland,* 148 S.W.2d 865 (Tex.Civ.App.—Dallas 1941, writ dism'd, judg.corr.)

■ The elements which constitute "Estoppel by Acceptance of Benefits" are as follows:

"In order to create an estoppel by the acceptance of benefits, it is essential that the party against whom the estoppel is claimed should have acted with knowledge of the facts and of his rights, and that the party claiming the estoppel was without knowledge or means of knowledge of the facts on which he bases his claim of estoppel. . . ." 31 C.J.S. Estoppel § 109b, p. 561.

None of the appellees in their motions to require appellants to prove their interest in the probate court, alleged any element of estoppel to assert interest because of the acceptance of benefits under the 1960 will by Edgar Turcotte. The Bank, the Foundation, the Attorney General, and Lytton did, however, by amended pleadings in the district court, allege all of essential elements of such an estoppel. In that amended pleading, their "Third Amended Motion to Require Proof of Interest", as grounds for the asserted estoppel because of the acceptance of benefits by Edgar Turcotte, it was alleged (and found by the court): that Edgar Turcotte accepted and retained substantial benefits under the 1960 will in "at least the amount of $1,344,726.06"; that at the time he accepted such benefits, he acted with knowledge of his rights under the 1960 will, with knowledge of the facts surrounding the execution of the 1960 will, and with knowledge of the material facts affecting the estate; and that at the time he accepted such benefits, he knew, or should have known, of the assertions, claims and conclusions of undue influence and fraud practiced upon Mrs. East.

It was further alleged (and found by the court) that the appellants, "by reasons of standing in their predecessor's shoes", have "relinquished and surrendered" all interest in the East Estate, and they are not "interested persons" in the estate, and "have no right to maintain this will contest".

The appellants, in their Reply to the aforesaid "Third Amended Motion to Require Proof of Interest", by a plea to the jurisdiction of the district court to consider such matters and by special exceptions, challenged all of the aforesaid allegations constituting estoppel except the allegations that Edgar Turcotte qualified and acted as Executor of the 1960 will, accepted benefits under the will, defended against the action filed by plaintiffs on July 25, 1962, and went into possession of the properties devised and bequeathed to him by the 1960 will. Appellants pled:

". . . that such issues so created by said allegations were not created by defendants' pleadings in the probate court, and therefore, such issues may not be raised for the first time in this District Court on appeal because this Honorable Court is without jurisdiction to hear or determine issues not created by the pleadings filed in the probate court".

The plea to the jurisdiction and the special exceptions were overruled.

■ The same *ground* of estoppel was pled in both the probate court and in the district court. The *issue* in both courts was interest. It was recognized by the appellees that Edgar Turcotte, initially, had a sufficient interest to maintain a will contest, but they pled that this "interest" became a "relinquished interest" because of his acts and conduct in his lifetime, and that all of the appellants were estopped to challenge the 1960 will in their capacities as beneficiaries under the will of Edgar Turcotte, their predecessor in interest. That pleading in the probate court alleged an affirmative defense to the appellants' pleading that they were interested parties in the estate. That pleading was one of estoppel. The plea of estoppel was greatly expanded in the "Third Amended Motion to Require Proof of Interest", which was filed in the district court. There, all of the essential elements of "an estoppel by the acceptance of benefits" against Edgar Turcotte were alleged. Even though new facts constituting estoppel were alleged for the first time in the district court, such allegations did not inject a new issue into the proceedings, did not enlarge the ground of estoppel that was raised in the probate court, and did not change the *character* of the proceedings had in the probate court. We hold that the Bank, the Foundation, the

Attorney General and Lytton were legally entitled to amend their pleadings in the district court with respect to an estoppel because of the "acceptance of benefits" in the manner that they did so amend. Points 125–129, 131, 132, 135 and 136 are overruled.

The appellants, in points 153 through 157, assert that as a will contest is a proceeding in rem, and since an adjudication of property rights in the will contest that was filed by others would, or could, affect the rights of Edgar Turcotte, that neither Edgar Turcotte nor his devisees were any longer bound by his acceptance of benefits under the 1960 will, because: 1) there was no longer any mutuality in the estoppel asserted against him and his privies; 2) the filing of the will contest by others so changed the circumstances that it would be prejudicial and inequitable to enforce an estoppel against Edgar Turcotte and his privies; 3) there is neither pleading nor proof that Edgar Turcotte, at the time he accepted benefits under the 1960 will, knew that the will contest would be thereafter filed by other persons; 4) Edgar Turcotte, upon the filing of the will contest by others, became vested with the legal right to participate in any benefits resulting from the successful prosecution thereof, and, 5) that under the facts and circumstances existing, a denial of appellants' rights to prosecute and maintain the will contest that was initially instituted by others would violate due process of law by vesting in Edgar Turcotte and the appellants a right without a remedy.

■ The doctrine which precludes an estoppel because there is no mutuality has no application to this case. The fact that the filing of the will contest by others after Edgar Turcotte accepted benefits under the 1960 will might render the benefits so accepted by him conditional in the event the will was set aside, did not, of itself, give rise to a new right of Edgar Turcotte to contest the will if he, at the time the will contest was filed by others, was then estopped from contesting the will. The further fact that the benefits which Edgar Turcotte received by his acceptance thereof

would have to be returned in the event the 1960 will was held to be invalid does not destroy an estoppel against him to contest the will if he was already estopped at the time the will contest was filed. The estoppel against Edgar Turcotte, which existed at the time the will contest was instituted by the plaintiffs (Raul Trevino, et al), was not destroyed when the will contest was filed by others on July 25, 1962. Points 153 through 157 are overruled.

The appellants, in points 133, 134 and 146, complain of the court's findings that at the time Edgar Turcotte accepted benefits under the contested will he had full knowledge of his rights and the material facts affecting them, because there is no pleading in any court that Edgar Turcotte then knew that this will contest would thereafter be filed by others, such knowledge being a material fact which, as a matter of law, is essential to support an estoppel against Edgar Turcotte, and, therefore, "the district court was without jurisdiction to hear or determine such material issue on appeal".

In points 147 and 148, it is asserted that the court erred in finding that at the time Edgar Turcotte accepted the benefits he had full knowledge of his rights and the material facts affecting them because there is "no evidence" and the evidence is "insufficient as a matter of law" to establish that he then knew that this will contest would be thereafter filed by others.

■ Whether Edgar Turcotte, at the time he accepted the benefits under the 1960 will, knew that others would file a suit to contest the will at some later date is immaterial to whether he, by his acts and conduct during his lifetime, became estopped to contest the 1960 will. Points 133, 134 and 146, 147 and 148 are overruled.

There is neither pleading nor evidence to support the findings that Edgar Turcotte, at the time he accepted benefits under the contested will, had full knowledge of the lack of testamentary capacity of Mrs. East when she executed the will. Appellants' points 130, 141–145 are sustained.

In the prior appeal, we held that the intervention by the appellants did not add to the appellees' burdens in existence at that time, and that the appellees were not put in a worse condition because of the intervention by the appellants. The evidence on that point is the same in this appeal as it was in the former appeal. Nothing new or different in that respect is here presented. No reason has been advanced and no proof has been made that will support a different holding. The fact that the original defendants, the plaintiffs and all of the intervenors, save and except the appellants, then in the case, settled their differences, is of no importance in determining the issue of appellants' interest in the East Estate. There is no evidence that the intervention by the appellants caused any harm, damage, injury, prejudice or injustice to any of the appellees. Points 139, 140, 151 and 152 are sustained.

Appellees, in their "Third Motion to Require Proof of Interest", also alleged (and the court found) that Patrick A. Turcotte, at the time he filed his petition in intervention on December 20, 1963, "knew that Edgar Turcotte was estopped to contest the 1960 will and that such estoppel was binding upon intervenors as his successors in interest"; that he "devised a fraudulent scheme and design to circumvent the applicable rule of law in the State of Texas"; that he obtained the assignments for the sole and only purpose of circumventing the equitable doctrine of estoppel which precluded him, as a devisee of Edgar Turcotte, who accepted benefits under the 1960 will, from contesting the will; that as a result, neither Patrick A. Turcotte nor Robert A. Turcotte have standing as "interested parties" to contest the will "by virtue of these assignments"; and, "notwithstanding the validity or invalidity of these assignments, Patrick A. Turcotte and his assigns are estopped to deny the validity of the will".

It is undisputed that Patrick A. Turcotte, prior to the commencement of any negotiations with Putegnat and Walker, contacted several attorneys in connection with his proposed contest of the 1960 will. He was advised by most, if not all, that in their opinion, Edgar Turcotte would have been estopped to contest the will. It is also undisputed that Patrick A. Turcotte, upon the advice of his attorney, Jack Cook, formulated a plan whereby he would attempt to purchase interests from heirs at law of Mrs. East for the express purpose of obtaining an additional right to assert that he was a "person interested" in the estate.

The general rule is that the motives which prompt a person to act are not material in determining the existence of a cause of action. Accordingly, a person may exercise a legal right regardless of the motives actuating him, and the fact that an act not otherwise amounting to a legal injury is done with evil intent or improper motive does not render it actionable. *Magnolia Petroleum Co. v. Dubois*, 81 S.W.2d 157 (Tex.Civ.App.—Austin 1935, writ ref'd); 1 Tex.Jur.2d 521, Actions § 14; 6A C.J.S. Assignments § 59; 6 Am.Jur.2d, Assignments § 4.

It is immaterial what the motives were that caused Patrick A. Turcotte to seek out Putegnat and Walker and to buy a percentage of their interests in the East Estate. The plan was not illegal as being against public policy; it did not constitute a violation of any law of this State; it did not prevent Patrick A. Turcotte and Robert A. Turcotte from having standing to contest the will in their capacities as assignees of the assigned interests. Points 22 and 23 are sustained.

The court, among other findings of fact, found: 1) "Patrick A. Turcotte solicited employment by Robert C. Putegnat for Patrick A. Turcotte to represent the interest of Robert C. Putegnat in the Estate of Sarita K. East, Deceased, whereby Patrick A. Turcotte would furnish a lawyer and receive 5% of any recovery effected by Patrick A. Turcotte"; 2) and "Patrick A. Turcotte hired Robert C. Putegnat to hunt other persons who were both heirs of Sarita K. East, Deceased, and legatees or devisees under the 1948 will, and to acquire from them assignments of their interests in and to the Estate of Sarita K. East, Deceased".

Based on the foregoing findings of fact, the court concluded:

"The acts of Patrick A. Turcotte and Robert A. Turcotte and their attorney, Jack Cook, in acquiring such purported assignments from Robert C. Putegnat and Marie Walker were champertous, barratrous and illegal, and accordingly, and as a result thereof, such purported assignments were null and void and of no force or effect."

The appellants, by "no evidence" points, challenge the findings and conclusions that Patrick A. Turcotte committed barratry in the obtaining of the assignments. We treat the points which assert that the evidence is "insufficient as a matter of law" as "no evidence" points. In addition to the "no evidence" points (8, 9, 10 and 11), the appellants' points 12 to 21 are germane to their contention that none of the assignments are null and void by reason of: 1) barratry, or 2) violations of the Canons of Ethics of the State Bar of Texas. All points are grouped for purposes of discussion and disposition.

■■■ It is settled law in this State that the heirs, devisees and legatees of a decedent may validly assign all or any part of their rights and interests in a decedent's estate to another person. *Morris v. Halbert,* 36 Tex. 19 (1871); *Geraghty v. Randals,* 224 S.W.2d 327 (Tex.Civ.App.—Waco 1949, no writ); 20 Tex.Jur.2d, Descent and Distribution, § 33. An assignee of an heir at law, devisee or legatee of a decedent has a legal right to maintain a will contest to set aside a will which prejudicially affects the properties assigned or conveyed to him by the assignment under which he claims. *Dickson v. Dickson,* 5 S.W.2d 744 (Tex. Comm'n App.1928).

■■ A will contestant who has acquired rights through different sources to property owned by the decedent and disposed of by will may file a suit to contest a will. Such contestant is entitled to maintain the will contest if either right be valid, and he is not required to rely upon one or the other. *Abrams v. Ross' Estate,* 250 S.W. 1019 (Tex. Comm'n App.1923); *Turcotte v. Trevino,* supra.

The rule is set forth in 23 Am.Jur.2d, Descent and Distribution, § 36, p. 782, as follows:

" . . . Estoppels, where operating against the ancestor, do not operate against his heir as to property not inherited from the ancestor, but acquired from an independent source. Hence an heir is not bound by such an estoppel with respect to property taken by purchase, or devise, or inheritance, from one other than the particular ancestor".

■■ Article 430, Penal Code of Texas, the barratry statute which was in force at all times pertinent to this appeal, insofar as this appeal is concerned, made it illegal for a person to seek through solicitation employment to prosecute, defend or collect any claim, or to procure another to solicit for him employment in such claim. Generally speaking, a contract which is procured by personal solicitation in violation of the barratry statute is void as against public policy. *Pelton v. McClaren Rubber Co.,* 120 S.W.2d 516 (Tex.Civ.App.—Waco 1938, writ ref'd).

It is without dispute in the record that both Walker and Putegnat were heirs at law of Mrs. East and were beneficiaries under her 1948 will. They received nothing under the 1960 will. Each held the requisite interest in the East Estate to challenge the validity of the 1960 will, and, in fact, did so.

Walker and Putegnat each had a legal right to assign an undivided interest in their respective interests in the East Estate, and did so. Patrick A. Turcotte, who was not named in the 1960 will as a beneficiary and who received nothing under that will, and accepted no benefits under the same, even though he received an interest in properties owned by the East Estate through the will of Edgar Turcotte, Deceased, his father, had a legal right to purchase a percentage of the interest, if any, owned by Walker and by Putegnat in the East Estate, and did so. The assignments, if valid, afforded Patrick A. Turcotte and Robert A. Turcotte an additional right to maintain

their will contest, which right is completely independent of their right to challenge the will in their capacities as devisees under the will of Edgar Turcotte, Deceased. They had standing to contest the 1960 will "if either title pleaded showed in them any interest in the East estate". *Turcotte v. Trevino,* supra, at page 722.

Each assignment is valid on its face. "As long as the instruments remain in effect the rights of the parties have been determined". *Franke v. Cheatham,* 157 Tex. 397, 303 S.W.2d 355 (1957). When the assignments were introduced in evidence, Patrick A. Turcotte and Robert A. Turcotte established an interest in the East Estate that gave them standing to contest the will in their capacities as assignees of heirs at law of Mrs. East. In order to destroy that right, appellees were required to show that the assignors, under whom the assignees claim, were estopped to contest the will at the time the assignments were made, or that the assignments were null and void. It was not the burden of Patrick A. Turcotte and Robert A. Turcotte to prove that none of the assignments were invalid.

On December 21, 1963, Patrick A. Turcotte, Robert A. Turcotte and Jack Cook, their attorney, met with Putegnat in Brownsville, Texas. The only evidence that bears on the matter of barratry is found in the testimony of Putegnat. The relevant portions of his testimony are:

"Q. Well, after you said some 'hellos' or whatever you said, did they announce the purpose for which they came?

A. Well, Pat mentioned that he would like to represent me as an individual, not as a lawyer, but for five per cent of what I would recover.

Q. Was it your claim in this suit that you're talking about?

A. Yes, sir."

\* \* \* \* \* \*

"Q. All right. What did you tell him?

A. I'd sure like to have done that, but I had a lawyer and couldn't do it."

\* \* \* \* \* \*

"Q. And then after you learned that he could not represent you because you already had a lawyer, what did he have to say next?

A. Well, he showed me some copies of some instruments that were in a briefcase, and well, I couldn't tell much from it, but then he talked, about buying a percentage, and he'd like to buy five percent for a thousand dollars.

Q. What was said later about hiring you?

A. Well, we were in conversation and he hired me.

Q. To do what?

A. To buy interests from other relatives for a certain percent."

Thereafter, and on the same day, Patrick A. Turcotte told Putegnat, according to Putegnat, that "he'd like to buy five percent for a thousand dollars". Putegnat said that they "came to terms for a thousand dollars". Putegnat then called Walker, his sister, and asked her if she was interested in selling a portion of her interest in the estate. She indicated that she was so interested. The Turcottes and Putegnat then met with Walker.

Walker testified that on December 21, 1973, Robert Putegnat, her brother, telephoned her and told her that the Turcottes "would like to buy a percentage of our interest in the Estate"; and, "he asked me if I would like to sell a percentage of mine, five percent?" She agreed to sell five percent of her interest for a thousand dollars.

Putegnat and Walker were then each paid $1,000.00 by a check drawn on the Edgar Turcotte Estate Account, and by $10.00 in cash. Patrick A. Turcotte, according to Putegnat's testimony, paid him (Putegnat) $400.00 as a commission for his services, $200.00 for his own assignment and $200.00 for Walker's assignment.

Putegnat further testified that he was in need of money, about January 19, 1964. He contacted Walker. Both agreed that each would sell another five percent of their respective interests to Patrick A. Turcotte.

Putegnat telephoned Moises Vela, his attorney, and reported: "I had already sold five percent for a thousand dollars, and would it be all right to sell another five percent." Vela replied: "it will be all right".

Walker further testified that Putegnat called her sometime in January, 1964, and asked her if she was interested in selling another five percent to Patrick A. Turcotte. She said that she then called Mr. Vela, her attorney, and advised him of her desire to sell an interest in the East Estate to Patrick A. Turcotte.

He asked:

"Well, what do they want it for?"

She replied:

"It's just a percentage of my interest in the estate."

Vela then told her:

"Well, I don't think it could do any harm if that's what it is for . . . yeah, go ahead."

Following the telephone conversations between Putegnat and Walker relating to the sale of an additional five percent each, and after they had contacted their attorney (the same attorney who had filed their petition in intervention for them on September 30, 1963), Putegnat telephoned Patrick A. Turcotte, who came to Brownsville, and, according to Putegnat, "we sold them an extra five percent." When Putegnat was asked:

"Now, on the second occasion did Mr. Pat Turcotte again ask to represent you?";

he replied:

"No, sir."

Putegnat also testified that at the first meeting on December 21, 1963, that the Turcottes' attorney, Jack Cook, excused himself and went out into the yard immediately after Patrick A. Turcotte was told that he (Putegnat) was then represented by an attorney.

Following the meeting in January, 1964, Putegnat and Walker each signed an assignment that conveyed five percent of their interest in the East Estate to Patrick A. Turcotte. The assignments are each dated January 20, 1964, and were acknowledged on the same day. Each assignor was again paid by a check drawn on the Edgar Turcotte Estate Account in the sum of $1,000.00 and by $10.00 in cash. Walker and Putegnat both testified that Patrick A. Turcotte handed Putegnat four one-hundred dollar bills, which Putegnat said constituted his commissions for obtaining the two assignments.

■ There is no evidence that Robert A. Turcotte or Jack Cook committed an act of barratry. The court erred in concluding that they did. There is no evidence to support the finding that the negotiations between Patrick A. Turcotte commenced on December 20, 1963 (the day that the petition in intervention was filed by the appellants). It is conclusively shown that such negotiations did not commence until December 21, 1963.

Since the legal effect of the assignments is of such vital importance to this case, we quote the identical language that is found in each instrument, to-wit:

"THAT I . . ., being an heir at law of Mrs. Sarita Kenedy East, Deceased, for an in consideration of the sum of TEN DOLLARS ($10.00) and other good and valuable considerations to me in hand paid by Patrick A. Turcotte, the receipt and sufficiency of which is hereby acknowledged and confessed, have bargained, sold, granted, transferred, assigned, and conveyed, and by these presents do bargain, sell, grant, transfer, assign, and convey unto the said Patrick A. Turcotte, and to his heirs, executors, administrators, and assigns, an undivided Five Percent (5%) of all my rights, titles, and interests in and to all real and personal property of every nature and kind whatsoever, now or hereafter belonging to Sarita K. East, Deceased, and/or comprising any part of the Estate of said Sarita K. East, Deceased, to which I am, or may be, entitled in expectancy or otherwise as an heir at law or as a beneficiary under any valid Will and Testament of Sarita K. East, Deceased, including all choses in action, rights to bring lawsuits to cancel, annul, avoid, and/or set aside

any legal instrument or other document executed by the said Sarita K. East during her lifetime, intending hereby to convey, transfer, assign, bargain, and sell unto the said Patrick A. Turcotte, his heirs and assigns, the right to take any and all types of action which I could take, just as though the said Patrick A. Turcotte, his heirs and assigns, were standing in my shoes."

There is no language in any of the assignments which will support a finding that it constituted an offer and acceptance of employment whereby Patrick A. Turcotte agreed and was authorized to represent either Putegnat or Walker in the prosecution of their claims, as asserted by some of the appellees. The clear language of the assignments unmistakably shows that it was the intention of the assignors to sell, assign and convey, and they did so sell, assign and convey, unto the assignee, an undivided percentage in all property, real and personal, belonging to the East Estate in which they owned a present interest or an interest in expectancy. There is no language in any of the assignments that will support a contention that any such language constitutes a barratrous solicitation. Moreover, when two constructions of an instrument are possible, preference is given to that which does not result in the violation of law. *Lewis v. Davis,* 145 Tex. 468, 199 S.W.2d 146 (1947).

An analysis of the events that occurred on December 21, 1963 reveals that there were three separate and distinct discussions between Patrick A. Turcotte and Putegnat on that day. They occurred in the sequence hereinafter set out. First, Putegnat testified that Patrick A. Turcotte offered to represent him in the litigation for 5% of any recovery; that offer constituted a violation of Art. 430, V.A.P.C.; however, Putegnat rejected that offer immediately after it was made, and nothing ever came of it. Second, Patrick A. Turcotte then offered to purchase five percent of Putegnat's interest in the estate properties; that offer was accepted. Third, Patrick A. Turcotte, after his offer to purchase had been accepted,

offered to hire Putegnat to hunt for other "relatives" who might be interested in selling him a percentage of their interest in the estate properties; that offer was accepted. There is no evidence that any of the assignments here involved were obtained pursuant to the solicitation of Patrick A. Turcotte that Putegnat hire him to represent him in his suit to declare the 1960 will invalid.

In order for Patrick A. Turcotte and Robert A. Turcotte to establish that they were "persons interested" in the East Estate, which would give them standing to maintain their will contest, all that was required was that they prove that at least *one* of the four assignments was valid. They met that burden.

We need not decide whether or not the December 21, 1963 assignments were obtained as a result of barratrous conduct, since that determination is not essential to the disposition of this case. Irrespective of whether those assignments were obtained through barratry, the evidence conclusively shows that the January 20, 1964 assignments were not obtained by Patrick A. Turcotte as a result, directly or indirectly, of any illegal act. Those assignments were suggested and negotiated solely at the instance of Putegnat and Walker. They initiated the negotiations for the sale. Patrick A. Turcotte did not solicit employment with respect to the execution and delivery of those assignments. The solicitation by Patrick A. Turcotte on December 21, 1963 to represent Putegnat had no bearing on the voluntary offer of sale made by Putegnat and Walker to Patrick A. Turcotte on January 20, 1964. There is no evidence that the acts of Patrick A. Turcotte in acquiring those particular assignments "were champertous, barratrous and illegal", as concluded and held by the court.

The contention that all of the assignments are invalid because Patrick A. Turcotte, prior to the execution of the first assignment by Putegnat, gave Putegnat legal advice is not well founded. The giving of legal advice by a person who is not a

lawyer, even if that were done, is not a violation of the barratry act.

The mere hiring of a person to search for heirs at law of a decedent in order to purchase all or any of their interest in the estate of the decedent, is not prohibited or made illegal by the barratry statute. We have not been cited to a Texas case, nor have we found a case, that makes it unlawful to hire a person to search for heirs and obtain assignments of a portion of their interest in the decedent's estate from them, irrespective of the motives for such activity.

There is no merit to the claim of some of the appellees that the assignments are invalid because Patrick A. Turcotte violated the Canons of Ethics of the State Bar of Texas. Patrick A. Turcotte was not a lawyer at any of the times in question. The Canons of Ethics apply only to the professional conduct of a lawyer. Patrick A. Turcotte was not bound thereby.

There is no evidence that the assignments of January 20, 1964 were obtained as a result of any illegal conduct by Patrick A. Turcotte, nor is there any evidence that they were obtained in violation of the Canons of Ethics. The assignments do not contravene the public policy of this State. There is no basis for the conclusion and holding by the court that those assignments are "null and void and of no force or effect". Points 8 through 21 are sustained.

Putegnat and Walker, in their motion to require Patrick A. Turcotte and Robert A. Turcotte to prove their interest, and the Bank, the Foundation, the Attorney General and Lytton, in their "Third Amended Motion to Require Proof of Interest", further alleged, in substance, (and the court found): 1) prior to the execution of the assignments to Patrick A. Turcotte, Putegnat and Walker employed Moises V. Vela as their attorney in the East Will suit and vested in him exclusive authority to control their cause of action, and, consequently, the assignors were without authority to assign any right to contest the 1960 will; 2) the assignments to Patrick A. Turcotte were executed and delivered subject to the condition that they would never be used to adversely affect the interest of Walker and Putegnat, which condition "has been broken, rendering these assignments of no force and effect and void"; 3) the "obtaining of the assignments" and the use thereof "against the interest of said assignors, amounted to a fraud practiced by said assignees against said assignors".

The appellants excepted to the allegations of fraud contained in the aforesaid motions to require the appellants to prove their interest on the ground that none of the facts necessary to constitute actionable fraud were alleged. The exceptions were overruled.

Points 34 through 49 relate to the asserted error of the court in holding that the assignments "did not convey to Intervenor Patrick A. Turcotte, et al, a sufficient interest to authorize them, or either of them, to maintain a contest of the probate of the '1960 will'", because the assignments "are tainted with fraud and there was fraud in the inducement of such assignments". Points 27 through 33 attack the holding by the court that the assignments are unenforceable and were ineffective to furnish a basis of standing to contest the 1960 will, because of the breach of the condition of delivery.

Fraud is never presumed, and it has long been the rule that until all of the elements constituting fraud are alleged (and proved), the presumption is in favor of the fairness of the transaction. *Turner v. Lambeth*, 2 Tex. 365 (1847); *Hawkins v. Campbell*, 226 S.W.2d 891 (Tex.Civ.App.—San Antonio 1950, writ ref'd, n. r. e.). The necessary elements of fraud are set out by Chief Justice Greenhill in Oilwell Division, *United States Steel Corporation v. Fryer*, 493 S.W.2d 487, 491 (Tex.Sup.1973). It is not necessary that those elements be repeated here. The appellees did not allege all of those essential elements of fraud. Furthermore, nowhere is it alleged by any of the appellees that Patrick A. Turcotte made a promise concerning something in the future, knowing at the time it was made that he had no intention to comply

with the promise. Without that essential allegation, nothing is pled except a breach of contract based solely on the fact that the promise was broken. In the absence of such an allegation, fraud is not alleged. *Precision Motors v. Cornish,* 413 S.W.2d 752 (Tex.Civ.App.—Dallas 1967, writ ref'd, n. r. e.); *Morgan v. Box,* 449 S.W.2d 499 (Tex. Civ.App.—Dallas 1969, no writ); *Medina v. Sherrod,* 391 S.W.2d 66 (Tex.Civ.App.—San Antonio 1965, no writ).

Both Putegnat and Walker testified, in substance, that during the discussion on December 21, 1963, Patrick A. Turcotte told them that the assignments would not be used to hurt them or against their interests. The appellants' objections to the admission of such testimony into evidence were overruled.

The only evidence with respect to any representations by Patrick A. Turcotte to the effect that the assignments would not be used against the interest of either Putegnat or Walker shows that they were made on December 21, 1963. There is no evidence that he made any such representations during the discussions and negotiations that were had on January 20, 1964.

■ The continued assertion by Patrick A. Turcotte and Robert A. Turcotte that they were "persons interested" by virtue of the assignments, did not constitute a use of the assignments in such a way that the assignors suffered any legal harm. The fact that it is impossible to finally settle the entire controversy and to admit the 1960 will to probate by agreement (rather than to settle the issue of the validity of the will by a trial on the merits) so long as Patrick A. Turcotte and Robert A. Turcotte remain parties to the suit, is not evidence that the assignments have been used against the interests of Putegnat and Walker.

■ The validity of any instrument is to be determined as of the time it was made, and in the light of the circumstances surrounding the parties at that time, not at some subsequent date. *Atkins v. Womble,* 300 S.W.2d 688 (Tex.Civ.App.—Dallas 1957, writ ref'd, n. r. e.); *Ore City Co. v. Rogers,*

190 S.W. 226 (Tex.Civ.App.—Texarkana 1916, writ ref'd). At the time the assignments were negotiated, executed and delivered, there was no possible way that the use of the assignments by Patrick A. Turcotte to assert standing in court to challenge the validity of the 1960 will could conflict with the interests of Putegnat and Walker. All of the parties to the assignments were then seeking the same thing. Their interest was common. The fact that several years later the interests of the assignors changed by their compromising their claims cannot relate back so as to render false the representations which were true when made. There is no evidence that the representations were not made in good faith at the time they were made. See *San Marcos Baptist Academy v. Burgess,* 292 S.W. 626 (Tex.Civ.App. —San Antonio 1926, no writ).

■ While it is established that Patrick A. Turcotte, at the outset of his discussions with Putegnat on December 21, 1963, was told by Putegnat that he was then being represented by a lawyer, there is no evidence that he, at that time or at any time prior to the execution and delivery of the assignments of January 20, 1964, knew about any of the provisions contained in Putegnat's contract of employment with Vela. Patrick A. Turcotte was not under any duty to make any inquiry concerning the provisions of such contract.

■ The record further shows that on January 20, 1964, the lawyer for the assignors approved the sale of an additional five percent, and advised them to proceed. Under those facts Putegnat and Walker are estopped to assert the invalidity of the assignments because of lack of authority to execute the same on account of the contract which they had previously made with their lawyer. There is no pleading or evidence that either Putegnat or Walker made an offer to return the $1,010.00 paid to them for each assignment. Vela did not challenge the assignments on any ground. The appellants' plea of estoppel to assert want of authority should have been sustained.

This Court, speaking through Justice Nye, now Chief Justice, in *Hidalgo County*

*v. Pate,* 443 S.W.2d 80, 87 (Tex.Civ.App.—Corpus Christi 1969, writ ref'd, n. r. e.), said:

"The law of general application is that the execution of a contract in writing is deemed to have set aside all oral agreements theretofore made. Any representations made prior to or contemporaneously with the execution of the written contract are inadmissible in the absence of accident, fraud or mistake of fact to contradict, change or add to the plain terms of such written contract . . ."

■ In the instant case, the pleadings of the appellees are insufficient to allege fraud, and there are no pleadings that the assignments were executed through mistake of fact or accident. Each assignment, on its face, is complete and unambiguous. The asserted representations are not contained in any of the assignments. In that state of the record, prior understandings, if any, were merged into the assignments, and the intent of the parties must be ascertained solely from the assignments, without the aid of extrinsic evidence. *Anderson & Kerr Drilling Co. v. Bruhlmeyer,* 134 Tex. 574, 136 S.W.2d 800 (1940). Any other holding would permit the introduction of prior verbal representations that would vary the terms and provisions of written instruments that are clear and unambiguous on their face.

The testimony of Putegnat and Walker concerning the oral representation was inadmissible, and without that testimony, there is no evidence that Patrick A. Turcotte represented to Putegnat that the assignments would not be used against their interest. It was error for the court to overrule the aforesaid special exceptions which were levelled at the conclusionary allegations of fraud. It was also error to admit the testimony of Putegnat and Walker into evidence concerning the verbal conditions which they say were attached to the "obtaining" of the assignments.

Were this Court to hold, as did the district court, that since Patrick A. Turcotte and Robert A. Turcotte are estopped to contest the 1960 will in their capacities as devisees under the will of their father, Edgar Turcotte, Deceased, that they are precluded and prohibited by law "from setting up any right or claim of their own, even if legal and well founded, which would defeat or in any way prevent the full effect and operation of every part of the '1960 will', and, therefore Intervenors Patrick A. Turcotte, et al, and each of them must renounce any interest claimed by them by virtue of the purported assignments dated December 21, 1963 and January 20, 1964", we would, thereby, in effect ignore the holding in *Abrams v. Ross' Estate,* 250 S.W. 1019, 1021 (Tex.Comm'n App. 1923), and the rule that is set out in 23 Am.Jur.2d, Descent and Distribution, § 36, p. 782. This, we refuse to do. Points 27 through 49 are sustained.

■ There is no basis for the holding that Patrick A. Turcotte and Robert A. Turcotte were not "persons interested" on the ground that the interests assigned were not actually owned by them individually, but were owned by all of the beneficiaries of the Edgar Turcotte Estate, since the consideration for each assignment was paid for by a check drawn on the Edgar Turcotte Estate Account. There are no pleadings to support any such attack on the legal ownership of the properties which were assigned and conveyed to Patrick A. Turcotte, the sole assignee and grantee named in the assignments. There is no evidence to support the court's conclusion that Patrick A. Turcotte and Robert A. Turcotte were not the sole owners of the interests originally purchased by Patrick A. Turcotte from Putegnat and Walker. Points 99 through 104 are sustained.

■ The court further concluded:

"The description of the interest purportedly transferred under the terms of the assignments from Robert C. Putegnat and Marie Walker to Patrick A. Turcotte is insufficient as a matter of law and such assignments do not transfer to Intervenors Patrick A. Turcotte, et al a sufficient interest to maintain a contest of the probate of the '1960 Will' ".

The conclusion finds no support in the record. The appellees did not plead that the description of the interests was either insufficient or ambiguous. Moreover, the descriptions are, as a matter of law, sufficient. See *Hale v. Hollon,* 90 Tex. 427, 39 S.W. 287 (1897); *Vineyard v. O'Connor,* 90 Tex. 59, 36 S.W. 424 (1896); *Mow v. Baker,* 24 S.W.2d 1 (Tex.Comm'n App. 1930); *Young v. Rudd,* 226 S.W.2d 469 (Tex.Civ. App.—Texarkana 1950, writ ref'd, n. r. e.); *McMahan v. McMahan,* 175 S.W. 157 (Tex. Civ.App.—Dallas 1915, writ ref'd). Points 95 through 98 are sustained.

The record conclusively shows that none of the appellants are barred by laches from prosecuting the will contest initiated by them on December 20, 1963. Points 117 through 120 are sustained.

In view of the sustaining of the above enumerated points and of the disposition of this appeal hereinafter made, it is not necessary for us to consider any of the appellants' remaining points of error.

The judgment of the district court which was signed on June 26, 1975, insofar as it dismissed the appellants Louis Edgar Turcotte, Jr., John W. Turcotte, Joseph A. Turcotte, Elizabeth Stella Turcotte, and Elizabeth A. Turcotte from the case for want of interest in the East Estate is affirmed; the judgment insofar as it dismissed the appellants Patrick A. Turcotte and Robert A. Turcotte from the case for want of interest is reversed, and judgment is here rendered that Patrick A. Turcotte and Robert A. Turcotte are "persons interested" in the East Estate and have legal standing to maintain the will contest; the judgment insofar as it affects the appellants Patrick A. Turcotte and Robert A. Turcotte is reversed and the cause as to them is remanded to the trial court for a trial on the merits.

Costs of this appeal are taxed 50% to the appellees who filed briefs herein and 50% to the appellants, Louis Edgar Turcotte, Jr., John W. Turcotte, Joseph A. Turcotte, Elizabeth Stella Turcotte, and Elizabeth A. Turcotte.

AFFIRMED IN PART, REVERSED AND RENDERED IN PART, AND REVERSED AND REMANDED IN PART.