**VERNA DRILLING COMPANY,**
Appellant,

v.

**PARKS–DAVIS AUCTIONEERS, INC.,**
et al., Appellees.

No. 08–82–00322–CV.

Court of Appeals of Texas,
El Paso.

Sept. 21, 1983.

Rehearing Denied Oct. 19, 1983.

Hayden Burns, Butler & Binion, Houston, for appellant.

John E. Gunter, Rassman, Gunter & Boldrick, Midland, for appellees.

Before STEPHEN F. PRESLAR, C.J., and WARD and SCHULTE, JJ.

## OPINION

SCHULTE, Justice.

Appellant's cause of action arose out of an alleged breach by Appellees of a fiduciary duty arising out of alternatively alleged agency relationships. The case concerns the purchase by Appellees of a National 110 drilling rig which Appellant alleged was acquired by Appellees with knowledge of an agreement to appraise it for Appellant and through the improper use of confidential information provided to Appellees by Appellant. Following a jury verdict favorable

to Appellant, plaintiff below, the trial court granted Appellees' motion for judgment non obstante veredicto. Appeal is taken from a take nothing judgment. We affirm.

We will refer to Appellant as Verna, Appellee Parks-Davis Auctioneers, Inc., as Parks-Davis, Nomad Drilling Company as Nomad, the other Appellees by name, Byrd Drilling Company as Byrd, Offshore Drilling Company as Offshore, and Hardy Machinery Company as Hardy. Essentially as to the facts, in the spring of 1977, Franklin, the Chairman of the Board of Verna, was told by Eichelberger, an officer of Offshore, that Offshore had a rig for sale. In May of 1977, Parks-Davis undertook the appraisal of Byrd for Verna. Harries, an employee of Parks-Davis, was designated by Parks-Davis to do the Byrd appraisal. On May 18, 1977, there was a meeting between Franklin, Hooper (the president of Verna) and Harries of Parks-Davis to discuss the Byrd appraisal. The conversation turned to the rig overseas which had no connection with the Byrd appraisal. Franklin testified he told Harries that Verna would also be interested in getting that rig appraised. Franklin testified that Harries stated that he (Harries) would have to consult with James Davis of Parks-Davis regarding the appraisal of the rig. On May 28, 1977, there was another meeting of the same three persons, again in regard to Byrd. Franklin testified Harries said James Davis agreed that Parks-Davis would appraise the rig and that he then gave Harries the name of the owner and its location. Neither Harries nor anyone else from Parks-Davis appraised the rig for Verna. Offshore gave Hardy authority to advertise the rig for sale. Hardy advertised the rig for sale in The Oil and Gas Journal on May 2 and 16, 1977. The ad did not contain the name of the owner or exact location. Parks-Davis paid a $36,250.00 finders fee to Hardy for that information, and negotiated the purchase June 22, 1977, directly with Offshore through Nomad, a subsidiary of Parks-Davis in the Caymen Islands. Nomad bought the rig, sold it to Parks-Davis and Parks-Davis sold it in turn at a substantial profit.

In response to seven special issues, the jury found that:

(1) Harries (of Parks-Davis) told Hooper or Franklin (of Verna) that Parks-Davis agreed to appraise the rig for Verna;

(2) Harries had the actual or apparent authority of Parks-Davis to tell Hooper or Franklin that Parks-Davis had agreed to appraise the rig;

(3) Parks-Davis first learned of the ownership and location of the rig due to the disclosure made by Hooper and Franklin to Harries;

(4) The ownership and location of the rig was confidential information at the time it was disclosed to Harries by Hooper and Franklin;

(5) James Parks, James Davis and Nomad participated in the purchase of the rig with knowledge of Parks-Davis' earlier agreement to appraise the rig for Verna;

(6) James Parks, James Davis and Nomad knowingly used the confidential information disclosed by Verna to purchase the rig; and

(7) $545,000.00 was the amount of the profit made by defendants (Appellees) on the sale of the rig.

In three points of error (One, Three and Five) Appellant contends that there was evidence to support jury findings as to Special Issues Nos. 1 through 7. In two additional points (Two and Four), Appellant urges it was entitled to judgment as a matter of law based on jury findings to Special Issues Nos. 1, 2 and 5 as well as 3, 4 and 6. Appellant urges that each of these separate sets of issues constitutes an independent basis of recovery of the damages found in answer to Special Issue No. 7. Appellees assert reply points but no counterpoints, arguing essentially that Harries was an employee only, that he had no authority to establish contractual obligations for Parks-Davis, and that as a matter of law Harries had no apparent authority to bind Parks-Davis. Further, Appellees argue that as a matter of law there was no fiduciary relationship between the parties arising out of the Byrd appraisal giving rise to a constructive trust.

It should be noted that this case was previously before us on a venue question. *Parks-Davis Auctioneers, Inc. v. Verna Drilling Co.,* 589 S.W.2d 168 (Tex.Civ.App.—El Paso 1979, writ dism'd). However, the evidence of the prior venue hearing is not now before us. Furthermore, our prior disposition was final only as to the venue question. See: *Southwestern Apparel, Inc., et al. v. Bullock,* 598 S.W.2d 702 (Tex.Civ. App.—Austin 1980, no writ); *Wichita Falls & S.R. Co. v. McDonald,* 174 S.W.2d 951 (Tex.1943). Likewise, the implied findings of the trial court upon which we relied in the venue case are not now before us.

For this Court now to sustain the action of the trial court in granting Appellees' motion for judgment notwithstanding the verdict, it must be determined that there is no evidence to support the controlling jury findings. In making that determination, we must review the evidence in the light most favorable to the jury findings, considering only the evidence and inferences which support them and rejecting the evidence and inferences contrary to the findings. *Williams v. Bennett,* 610 S.W.2d 144 (Tex.1980); *Dodd v. Texas Farm Products Co.,* 576 S.W.2d 812 (Tex.1979). In regard to circumstantial evidence when faced with a judgment non obstante veredicto, our determination is whether there was more than a scintilla of evidence to support the issue in question. *Gulf, Colorado & Santa Fe Railway Co. v. Deen,* 158 Tex. 466, 312 S.W.2d 933, 937 (1958). When the evidence offered to prove a vital fact is so weak as to do no more than create a surmise or suspicion of its existence, the evidence is, in legal effect, no evidence. R.W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.L. Rev. 359 (1960), at 363. Alternatively, we may determine that as a matter of law Appellant is not entitled to judgment regardless of the findings.

In its first point, Appellant contends that there was evidence to support the jury answers to Special Issues Nos. 1, 2 and 5, embodying Appellant's first theory of recovery. That theory as urged by Appellant is that Harries of Parks-Davis told Verna that Parks-Davis agreed to appraise the rig

for Verna, that Harries had the actual or apparent authority to tell Verna that Parks-Davis had agreed to the appraisal and that Appellees had participated in Appellees' purchase of the rig with knowledge of the Parks-Davis agreement to appraise it for Verna. Based on these findings, Appellant contends in its second point that it was entitled to judgment on these three findings as a matter of law. In our view, the crucial issue in this series is No. 2. If there is no evidence to support all of the necessary elements of apparent authority, then the jury's answers to Issues Nos. 1 and 5 will not alone support a judgment. In response to that crucial Issue No. 2, the jury found that Harries had the actual or apparent authority of Parks-Davis to tell Verna that Parks-Davis had agreed to appraise the rig. We find no evidence of actual authority and therefore turn to the question of apparent authority. In this regard, the court charged the jury that:

> Apparent authority is such authority that a reasonably prudent person using diligence and discretion would believe another person to have as a result of the *conduct of such person.* (Emphasis provided).

In *Anchor Crane and Hoist Service Company v. Sumrall Personnel Service Inc.,* 620 S.W.2d 653 (Tex.Civ.App.—Dallas 1981, no writ), at page 654, the court said:

> The test in determining the question of apparent authority is whether there is such *conduct on the part of the principal* (emphasis provided) as would lead a reasonably prudent person using diligence and discretion to believe that the agent had authority to act for the principal. Citing *Chastain v. Cooper & Reed,* 152 Tex. 322, 257 S.W.2d 422 (Tex.1953).

We are faced with the absence of any cross-point directed at an obvious defect in the charge. The jury was asked to apply a definition that does not comport with that set forth in *Anchor Crane,* supra. We are thus left with a search of the record for evidence to support the charge as given. In applying the elements contained in the definition of apparent authority as charged,

should we determine that there was no evidence that Verna acted as a reasonably prudent person under the circumstances, or should we determine that there is no evidence that Verna used diligence and discretion in believing that Harries had authority to commit his principal to do the appraisal, then we need not reach the improper consideration of the conduct of Harries.

Franklin, the chairman of the Board of Verna, in the spring of 1977, possibly as early as February of that year, spoke to Eichelberger of Offshore, the owner of the rig. Eichelberger told Franklin he had a rig in Saudi Arabia that Offshore would be interested in selling for $725,000.00. Franklin also testified that Eichelberger told him that he had not talked to anyone else about the rig and that Franklin should go take a look at it. If Franklin was then interested, Eichelberger would be pleased to sell it to him and would not bother to advertise it. Then in May of 1977, Verna became interested in buying the Byrd company and Franklin personally called James Davis to arrange for the appraisal of Byrd by Parks-Davis. Verna had never used Parks-Davis before. James Davis assigned Harries to do the Byrd appraisal. Franklin had taken no action to follow up on the Eichelberger offer, so that as of May 18, 1977, Franklin testified, he "desperately" needed somebody to go look at the rig, that he felt a degree of urgency in that the information from Eichelberger was "perishable" and in time would become "common knowledge." Franklin, although testifying Harries said Parks-Davis would appraise the rig, never extracted any definite commitment as to when the appraisal would be accomplished. In spite of the "urgency" and "desperate" need, Franklin left for Nigeria on June 14, 1977. Unlike his direct arrangement with James Davis in regard to the Byrd job, Franklin never contacted James Davis or James Parks regarding the rig in Saudi Arabia. Franklin testified he knew Harries was an employee of Parks-Davis but "I am not contending any knowledge whatsoever of his (Harries') position in Parks-Davis."

■ A party dealing with an agent is bound, at his peril, to ascertain not only the fact of the agency, but the extent of the agent's power, and in case either is controverted, the burden of proof is on him to establish it. *Boucher v. City Paint & Supply, Inc.,* 398 S.W.2d 352 (Tex.Civ.App.—Tyler 1966, no writ).

■ Hooper, Verna's president, was equally aware of the situation regarding the rig. The day after the meeting of May 28, he left for a vacation in Europe. When he got back, Franklin had already left for Nigeria. Neither, prior to their respective departures had contacted anyone at Parks-Davis concerning the rig other than Harries. Like Franklin, Hooper didn't know whether Harries was an officer of Parks-Davis or not, and in any event did not try to find out. It is apparent that no one at Verna made any attempt to determine directly from Parks-Davis or its officers, what authority, if any, their employee Harries had to commit Parks-Davis to make an appraisal in Saudi Arabia. No inquiry whatsoever was directed to James Davis or James Parks or anyone else at Parks-Davis to verify in fact that Parks-Davis had actually agreed to do the appraisal. No time commitment was ever obtained even from Harries. Nor was there any inquiry to Parks-Davis as to when, if ever, the appraisal would be accomplished, and time, in retrospect, was of the essence. Verna had no exclusive with Offshore, no option. Verna insisted during the trial that it would not under any circumstances buy the rig sight unseen. Applying the review principles previously set forth, we must conclude that there was no evidence that Verna acted as a reasonably prudent person under the circumstances regarding a matter which was purportedly of serious importance and urgency. We likewise find no evidence of the exercise of any discretion or diligence by Verna and its officers to ascertain whether Harries was authorized to act as an agent of Parks-Davis in contracting for a new appraisal, nor in Verna's believing that Harries had authority to commit his principal to do the new appraisal which had nothing to do with the Byrd appraisal to which he had been assigned. We need not reach a consideration of the conduct of Har-

ries, and the jury was not asked to evaluate the conduct of the principal.

■ Since we believe there was no evidence to support the required elements of apparent authority and therefore the jury's finding to Special Issue No. 2 and that the failure of Issue No. 2 is fatal to all the rest of the series, we will only briefly comment on Special Issues Nos. 1 and 5 of that series. In regard to Special Issue No. 1, there was testimony from Verna, which, if believed, and it was, would support the jury's answer that Harries told Verna that Parks-Davis agreed to appraise the rig for Verna. As to Special Issue No. 5 that Appellees participated in the purchase of the rig with the knowledge of Parks-Davis' earlier agreement to appraise the rig for Verna, since there could be no agreement because of the failure of Special Issue No. 2, there could be no knowledge of an agreement. Furthermore, there was no more than a scintilla of evidence to support the finding. Appellant's Points of Error Nos. One and Two are overruled.

In its third point, Appellant contends there was evidence to support the jury's answers to Special Issues Nos. 3, 4 and 6 embodying Appellant's second theory of recovery. That theory is that Parks-Davis first learned of the ownership and location of the rig through Harries of Parks-Davis, that ownership and location were confidential information at the time it was divulged and that Appellees used the confidential information disclosed by Verna to purchase the rig. Based on these findings, Appellant contends in its fourth point that it was entitled to judgment on these three findings as a matter of law, independent of its first theory. Appellant argues that Parks-Davis was acting as Verna's agent in doing the Byrd appraisal at the time in question and that the evidence is sufficient to establish that Parks-Davis breached the fiduciary duty created by its status as Verna's agent for the Byrd appraisal.

■ It is undisputed that Parks-Davis was doing the Byrd appraisal for Verna beginning in May, 1977, and that it was successfully concluded in the summer of that year. The three special issues con-

sidered here (3, 4 and 6) make no finding regarding the existence of a fiduciary or confidential relationship existing between Parks-Davis and Verna arising out of the Byrd appraisal. By its judgment notwithstanding the verdict, the trial court's implied finding is that the Byrd appraisal gave rise to no duty extending to a new appraisal of a rig in Saudi Arabia. Although Appellant would isolate the application of the agency Issue No. 2 to its first theory of recovery, we cannot do so. Absent Appellant prevailing in regard to Issue No. 2 and absent a finding of agency in regard to Appellant's second theory, and present the court's implied finding above referred to, we are compelled to conclude that there is no basis for recovery based on Appellant's second theory regardless of the answers to Special Issues Nos. 3, 4 and 6. In any event there was no more than a scintilla of evidence to support the jury's answers to Special Issues Nos. 3 and 6. Under the court's definition of confidential information, given the absence of information as to ownership and location in the ads of May 2 and May 16, there was evidence to support the answer to Special Issue No. 4. For the reasons expressed, Appellant's Points Nos. Three and Four are overruled.

In regard to Appellant's fifth point and the jury response to damage Issue No. 7, although we find there was evidence to support the answer, the finding is rendered immaterial by our prior determinations. Appellant's fifth point is overruled.

The judgment is affirmed.