Floyd **CURREY**, Appellant,

v.

**LONE STAR STEEL COMPANY**, Appellee.

Nos. 2–84–025–CV, 2–83–207–CV.

Court of Appeals of Texas, Fort Worth.

Sept. 6, 1984.

Will Barber, Dallas, for appellant.

Burford & Ryburn, and Catherine A. Gerhauser, Dallas, for appellee.

Before FENDER, C.J., and HUGHES and JOE SPURLOCK, II, JJ.

## OPINION

FENDER, Chief Justice.

This case involves two separate lawsuits which stem from the same basic set of facts and which were consolidated on appeal for the purposes of oral argument. Both suits involve the same parties. In the first suit [hereinafter referred to as Currey I], the trial court granted the defendant an instructed verdict at the close of the plaintiff's evidence. In the second suit [hereinafter referred to as Currey II], the court granted a summary judgment on the pleadings in favor of the defendant. The plaintiff now appeals both judgments, and we will consider each appeal separately.

We reverse the judgment of the trial court in Currey I, and in Currey II we affirm in part and reverse in part.

The appellant in the case, Floyd Currey, was employed for over twenty years by the appellee, Lone Star Steel Company [hereinafter referred to as Lone Star]. Currey worked at a steel plant owned by Lone Star, and was directly involved in the steelmaking process. As a condition of his employment, therefore, he was required to sign documents assigning all of his ideas, discoveries, inventions, and improvements to Lone Star. Currey also made a written promise that if he left Lone Star he would not divulge any secret information obtained during his employment.

Although Currey was originally a union member, in 1966 he was promoted outside the bargaining unit to a supervisory position. In 1971, while acting in the course of his duty as a supervisor, Currey issued one of his subordinates, Shorty Jones, a disciplinary pink slip for failure to do adequate work. After receiving the slip, Jones followed Currey home from work and attacked him in his yard. Currey defended himself from the attack, and as a result injured Jones. Lone Star then terminated Jones because the assault stemmed from "work connected issues."

Immediately after the assault took place, Currey called both his immediate supervisor, Charles Coleman, and the Lone Star employee relations manager, Jim Smith. Smith then called the Lone Star plant attorney, Albert Tarbutton, who instructed Smith to have Currey go directly to the plant and give a statement regarding the fight. As a result of Tarbutton's instructions, Currey returned to the plant that same evening and spent approximately five hours making a formal statement to plant employees.

Several days after the altercation, Jones filed criminal assault charges against Currey and threatened him with a civil lawsuit. Smith directed Currey to go to Tarbutton's office about the matter and when Currey arrived, Tarbutton gave him an appearance bond to sign. After Currey signed the bond, Smith and Tarbutton also signed it as sureties.

In addition to the handling of the appearance bond, Tarbutton also discussed the prospective civil lawsuit with Currey. According to Currey, Tarbutton told him to keep Lone Star out of the case, because he would be a more sympathetic defendant alone. Currey claims that Tarbutton then promised him that if he would not involve Lone Star, Lone Star would pay all of the legal fees and expenses incurred in defending the action. Finally, Currey contends, Tarbutton instructed him to hire a particular lawyer to defend him in the suit, rather than allowing him to employ counsel of his own choosing.

Although the criminal charges against Currey were dropped, Jones did file a sepa-

rate civil suit. In order to defend this suit, Currey hired the attorney whose name was supplied to him by Tarbutton. Although Currey was eventually granted summary judgment in the suit, he incurred approximately $3,675.00 in legal fees. Despite Currey's repeated demands for reimbursement from Lone Star, however, Lone Star's management never met with him regarding payment of the fees, and he was forced to sell part of his farm in order to pay the fees himself. Finally, Currey filed suit against Lone Star in order to recover his legal expenses. [Currey I].

Lone Star responded to the suit by firing Currey. Currey then attempted to present his grievances at Lone Star's parent company shareholder meeting, but was refused a hearing. He then initiated a second action against Lone Star [Currey II] in which he alleged that the company was liable to him for further actual and exemplary damages as a result of unconscionable conduct toward him which ultimately resulted in his termination. With regard to both suits, the trial court found that there was no genuine issue of material fact and that Lone Star was entitled to judgment in its favor as a matter of law.

## CURREY I

Currey's basic contention in Currey I is that Lone Star is liable to him for attorney's fees because 1) Albert Tarbutton fraudulently represented to Currey that Lone Star would pay his attorney's fees; 2) Tarbutton had either actual or apparent authority to make such a promise; and 3) Currey relied on the promise and thereby incurred damages. On appeal, Currey contends in his first point of error that the trial court erred in instructing a verdict in favor of Lone Star, because there was some evidence adduced at trial regarding all of the elements of his action. We agree.

■ Generally, a trial court may instruct a verdict if as to at least one fact proposition, which constitutes a component element of plaintiff's theory of recovery, the plaintiff's evidence is so meager that reasonable men could not differ as to the conclusion that such proposition is not established. *Mumphord v. First Victoria Nat. Bank*, 605 S.W.2d 701 (Tex.Civ.App.— Corpus Christi 1980, no writ). In reviewing the trial court's granting of an instructed verdict, the evidence must be considered in the light most favorable to the party against whom the verdict is instructed. *Texas Employers Ins. Ass'n v. Page*, 553 S.W.2d 98 (Tex.1977). If there is any conflicting evidence of probative nature in the record, a determination of the issue is for the jury. *White v. Southwestern Bell Tel. Co., Inc.*, 651 S.W.2d 260 (Tex.1983).

When the record in the instant case is reviewed in the light most favorable to Currey, it is clear that there is conflicting probative evidence on the issue of whether Tarbutton made the alleged promise of payment. Currey testified at trial that the promise was made; Tarbutton denied it in his deposition which was read to the jury. It is also clear from the record that Currey presented probative evidence as to his damages; he introduced an exhibit showing the specific dollar amount which he allegedly lost as a result of Lone Star's refusal to pay. The main point of contention in the case, therefore, is whether there is any probative evidence that Tarbutton had the authority, as agent for Lone Star, to promise that Lone Star would pay Currey's attorney's fees.

■ It is a basic rule of agency that an agent may not bind his principal in the absence of either actual or apparent authority to do so. 3 Tex.Jur. *Agency* sec. 31 (1980). Thus, unless Tarbutton had actual or apparent authority to promise payment of legal fees, any promise he may have made to Currey cannot be binding on Lone Star. In order to reverse the trial court's instructed verdict, therefore, we must find some probative evidence in the record that shows such authority on the part of Tarbutton.

■ In general, actual authority means authority that the principal (1) intentionally conferred upon the agent; (2) in-

tentionally allowed the agent to believe that he possessed; or (3) by want of due care allowed the agent to believe that he possessed. *National Cash Register Co. v. Wichita F. Food Lockers*, 172 S.W.2d 781 (Tex.Civ.App.—Fort Worth 1943), *aff'd* 142 Tex. 109, 176 S.W.2d 161 (1944). Apparent authority is based on the doctrine of estoppel, and one seeking to charge the principal through apparent authority of his agent must establish conduct by the principal that would lead a reasonably prudent person to believe that the agent had the authority he purported to exercise. *Biggs v. United States Fire Ins. Co.*, 611 S.W.2d 624 (Tex.1981). Thus, both actual and apparent authority depend for their creation on some manifestations, written or spoken words or conduct *by the principal* communicated either to the agent (actual authority) or to the third party (apparent authority). *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5th Cir.1974).

Although we find no evidence in the case at bar that Tarbutton had any actual authority to promise to pay Currey's legal fees, we find some probative evidence that he was clothed with apparent authority to do so. A review of the record in the light most favorable to Currey reveals evidence of acts by Lone Star and its employees which could have led a reasonably prudent person to believe that Tarbutton was authorized to make the alleged promise. First, Currey presented evidence that Lone Star's management in general held Tarbutton out to its employees as the plant attorney with authority to deal with legal problems arising at the plant. Currey produced testimony that Tarbutton was listed as the Lone Star attorney on the company organizational chart, and that his office was located on the plant premises. Further, Currey's evidence indicated that Tarbutton in fact had authority to handle the legal matters at the plant, such as contract negotiations, EPA and OSHA matters, and labor law problems.

Secondly, Currey produced some evidence of acts by individual Lone Star employees which could have reasonably led him to believe that Tarbutton had the authority to promise payment of legal fees. Currey presented testimony showing that when he called employee relations manager, Jim Smith, on the night of the assault, Smith immediately referred the matter to Tarbutton and told Currey to follow Tarbutton's instructions. Further, Currey testified that he was paid by the company for returning to the plant at Tarbutton's direction, and that such payment was made with the consent of R.L. Lattimore, the superintendent of the masonry department.

Thirdly, Currey also produced evidence showing that after Jones filed the assault charges and threatened the civil suit, Smith told Currey to go to Tarbutton's office regarding the matter. According to Currey, therefore, he was acting under Smith's direction in attending the meeting at which Tarbutton allegedly promised him that the company would pay his legal fees. In addition, Currey's evidence indicated that at the same meeting Tarbutton actually did pledge company funds, with Smith's approval, for the appearance bond.

■ We conclude that the evidence produced by Currey at trial is sufficient to raise a fact issue as to Tarbutton's apparent authority to bind the company to pay Currey's legal fees. The holding out by Lone Star of Tarbutton as plant attorney, in conjunction with Smith's acts, the payment by Lone Star for Currey's time used in following Tarbutton's directions, and the making of the bond by Tarbutton with Smith's approval were all acts by Lone Star as principal which might reasonably lead Currey to believe that Tarbutton had the authority to handle the entire Jones matter, and to disburse company funds in doing so. We hold, therefore, that the trial court erred in instructing a verdict in favor of Lone Star, and accordingly will order a new trial on the merits.

■ In point of error two Currey complains that the trial court erred in failing to consolidate Currey I and Currey II for trial together. We note, however, that although Currey did file a motion to consolidate the actions, there is nothing in the transcript to

show that the motion was ever ruled upon by the trial judge. Therefore, Currey has waived his complaint. *Rylee v. McMorrough,* 616 S.W.2d 649 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ dism'd).

In points of error three, four, and five Currey argues that the trial court erred in excluding certain evidence which Currey claims was necessary for a proper understanding of the case by the jury. Specifically, he argues that the court should have admitted (1) evidence of threats made by Jones prior to the assault; (2) evidence of improvements made by Currey to Lone Star's equipment; and (3) certain cross examination testimony of Tarbutton. In point of error six Currey contends that the trial court erred in excluding evidence of Currey's mental anguish, and in holding that mental anguish damages are not recoverable in a fraud action. Finally, in point of error seven, Currey complains that the trial court abused its discretion in allowing Lone Star's counsel to lead Currey with regard to background matters. However, since we have decided to reverse the trial court's instructed verdict and cannot anticipate whether these issues will arise on retrial, we decline to address them here.

The judgment is reversed and remanded for a new trial.

## CURREY II

In Currey II, which Currey filed after being terminated by Lone Star and being refused a hearing at the shareholders' meeting, Currey alleged that he was wrongfully terminated by Lone Star. He further claimed that Lone Star committed a number of other acts which caused him damage, because they were "unconscionable" and performed with malice and reckless disregard for his rights. Specifically, the acts which Currey alleged to be unconscionable are:

1) Placing Currey outside a bargaining unit's protection as a supervisor, giving him instructions for employees, and then failing to back him up when he sought to carry out such instructions.

2) Acting in violation of Lone Star's own rules by failing to properly discipline employees supervised by Currey.

3) Failing to take adequate measures to protect Currey from violence.

4) Failing to reimburse Currey for losses sustained in defending a lawsuit which arose out of his supervisory activities.

5) Failing to properly enforce Lone Star's and governmental safety rules and regulations.

6) Failing to provide Currey, as a supervisory employee, any adequate procedure for seeking redress and/or alleviation of grievances.

7) Promising time after time to meet with Currey concerning his grievances and failing to do so.

8) Restraining Currey's trade by appropriating his ideas, discoveries and improvements in the steel industry, and prohibiting Currey from using them thereafter in order to earn a living.

9) Requiring Currey to pursue his grievance in a court of law, and terminating him when he did.

10) Requiring Currey to assign all his ideas, improvements, and designs to Lone Star, and then terminating him without reimbursement.

After filing an answer to Currey's petition, Lone Star moved the court for summary judgment on the pleadings. In the summary judgment motion, Lone Star argued that (1) a suit for wrongful termination is not a recognized cause of action in Texas and (2) because wrongful termination is not a recognized cause of action, the facts and circumstances surrounding Currey's termination are also not actionable. Before the hearing on the summary judgment motion, Lone Star filed an amended answer in which it specially excepted to Currey's allegations regarding the wrongful termination and the other unconscionable acts on grounds that they did not give rise to a cause of action. After holding a hearing, the trial court overruled Lone

Star's special exceptions, granted the motion for summary judgment, and dismissed the case.

On appeal Currey alleges only one point of error, in which he claims that the trial court erred in granting the motion for summary judgment. Specifically, he argues that the issue of whether pleadings fail to state a cause of action may not be resolved by a summary judgment. In the alternative, Currey contends that even if the trial judge properly granted the motion for summary judgment on the wrongful termination issue, a granting of summary judgment with regard to the allegations of the other unconscionable acts was improper because they were separate causes of action which Lone Star ignored in its motion for summary judgment.

Lone Star, on the other hand, claims that a summary judgment is proper when the pleadings fail to state a cause of action. Lone Star construes all of Currey's complaints as relating to a wrongful termination cause of action, and claims that such an action does not exist in Texas. Thus, it argues that Currey's pleadings have not stated a cause of action. In the alternative, Lone Star asserts a number of cross points in which it contends that even if the trial court acted improperly in granting a summary judgment, it erred in overruling Lone Star's special exceptions to Currey's pleading.

 In general, it is improper to grant a summary judgment on a deficient pleading's failure to state a cause of action when the deficiency can be attacked through a special exception. *Texas Department of Corrections v. Herring*, 513 S.W.2d 6 (Tex.1974). An exception to the rule exists when the pleading deficiency is of the type that cannot be cured by an amendment; in such cases a special exception is unnecessary and a summary judgment based on the pleading's failure to state a legal claim is in order. *Jacobs v. Cude*, 641 S.W.2d 258 (Tex.App.—Houston [14th Dist.] 1982, no writ). In order to determine whether the trial court properly granted summary judgment in the instant case, therefore, we must decide if there was a pleading deficiency in Currey's petition which was incurable by amendment.

 Before we may address the question of pleading deficiency, however, we must initially determine whether Currey's pleading alleged only a wrongful termination cause of action, as Lone Star asserts, or whether it alleges a number of separate causes of action for unconscionable conduct in addition to the wrongful termination action. Toward the end of his petition, Currey alleges specifically that each of the acts and omissions by Lone Star "singularly and collectively constituted unconscionable conduct" which entitles him to damages. Thus, he is alleging that each act and omission is sufficient alone to give rise to a cause of action for unconscionable conduct. We hold, therefore, that these alleged acts and omissions must be considered as allegations of separate causes of action from the allegation of a wrongful termination action.

Having so held, we now turn to an analysis of the different causes of action to determine whether any of them contained an incurable pleading deficiency, so that granting of a summary judgment was proper. We first consider Currey's claim of wrongful termination.

 It is well settled in Texas that when an employment contract is oral and for no definite period of time, it is terminable at will by either party. *Scruggs v. George A. Hormel & Company*, 464 S.W.2d 730 (Tex.Civ.App.—Dallas 1971, writ ref'd n.r.e.). Thus, the employer may without liability, discharge an employee for good reason, bad reason, or no reason at all. *Phillips v. Goodyear Tire and Rubber Co.*, 651 F.2d 1051 (5th Cir.1981). In the instant case, Currey did not allege that he had a written employment contract for a definite period of time. He has, therefore, failed to plead a valid cause of action for wrongful termination. Further, because of the employment-at-will rule, Currey cannot amend his pleading to state a legal cause of action for wrongful termination based on

the facts which he did allege. We hold, therefore, that the trial court properly granted summary judgment with regard to Currey's wrongful termination action.

Having determined that summary judgment was proper with regard to the first cause of action alleged by Currey, we now turn to a discussion of the "unconscionable conduct" allegations. At this point we must consider Currey's claim that the trial court could not have properly granted summary judgment on the unconscionable conduct claims because Lone Star moved for judgment only on grounds that wrongful termination is an invalid cause of action, and failed even to mention the unconscionable conduct allegations. We agree with Currey's contention.

In general, a party may not be granted judgment as a matter of law on a cause of action not addressed in a summary judgment proceeding. *Chessher v. Southwestern Bell Telephone Co.*, 658 S.W.2d 563 (Tex.1983). Thus, when a defendant moves for summary judgment on only one of a plaintiff's several causes of action, the trial court can only grant summary judgment on that one cause of action. *Chessher, supra,* at 564. As we have previously stated, in the case at bar Lone Star has considered all of Currey's claims as referring to a wrongful termination action, and has not recognized the alleged unconscionable conduct as separate actions. Such a construction of the unconscionable conduct claim is reflected in Lone Star's summary judgment motion in which it refers to the alleged unconscionable acts to be "facts and circumstances surrounding [Currey's] termination which were merely part of the wrongful termination claim...." Thus, it is clear that Lone Star moved for summary judgment only on the wrongful termination cause of action, and not on the allegations of unconscionable conduct. We hold, therefore, that the trial court erred in granting summary judgment with regard to the unconscionable conduct allegations.

Lone Star argues in its cross points, however, that even if the trial court did err in granting the motion for summary judgment with regard to the unconscionability claims, it should have at least granted Lone Star's special exceptions to each of the claims. Specifically, Lone Star contends that the special exceptions should have been granted because none of the unconscionability claims as pled in Currey's petition state a cause of action in Texas. We agree.

In general, unconscionability is a term used to describe a contract which is unfair because of its overall gross one-sidedness or the gross one-sidedness of one of its terms. *Black's Law Dictionary* 1367 (5th ed. 1979); *see also* 27 Texas Practice sec. 111 (West 1983). Further, sec. 17.50 of the Deceptive Trade Practices Act creates a consumer's cause of action for an unconscionable action or course of action. TEX.BUS. & COM.CODE ANN. sec. 17.-50(a)(3) (Vernon Supp.1984). However, Currey has not alleged that he has an unconscionable contract with Lone Star which authorizes Lone Star to commit the acts he complains of, nor has he claimed that in relation to Lone Star he is a consumer within the meaning of the DTPA. In addition, Currey has cited no case or statute, and we have found none, which authorizes a general action for "unconscionable conduct" in a non-contract/non-DTPA situation. We hold, therefore, that by merely alleging that certain acts by Lone Star constituted "unconscionable conduct," Currey has failed to state a cause of action.

Although we have determined that Currey has alleged no valid unconscionability cause of action, we cannot state with certainty that under the facts alleged, he could not by amendment allege valid causes of action with regard to at least some of the various acts which he claims that Lone Star committed. Therefore, we conclude that Currey should be allowed to replead his cause of action with regard to these acts. *See Texas Department of Corrections v. Herring, supra.* We hold therefore that the trial court erred in failing to sustain Lone Star's special exceptions to

**214**

Currey's unconscionability claims, and accordingly reverse the court's ruling on that point.

The granting of the summary judgment on the wrongful termination action is affirmed. The granting of the summary judgment with regard to the unconscionability actions is reversed and remanded with instructions that the trial court grant Lone Star's special exceptions to Currey's pleadings.

It is so ordered.