**MEXICO'S INDUSTRIES, INC., Appellant,**

v.

**BANCO MEXICO SOMEX, S.N.C., Appellee.**

No. 08–92–00375–CV.

Court of Appeals of Texas, El Paso.

July 7, 1993.

Rehearing Overruled Aug. 18, 1993.

Steven C. James, Beck & James, P.C., El Paso, for appellant.

Juan Carlos Garay, Guevara, Rebe, Baumann & Coldwell, El Paso, for appellee.

Before KOEHLER, BARAJAS and LARSEN, JJ.

### OPINION

BARAJAS, Justice.

This is an appeal from a suit on twelve drafts. Banco Mexico Somex, S.N.C., the Appellee, sued to collect on the drafts after Mexico's Industries, Appellant, refused payment. The jury found in favor of Banco Mexico Somex and awarded the sum of $2,448,198.12, including pre-judgment interest. In seventeen points of error, Appellant challenges the trial court's judgment. We affirm the judgment of the trial court.

### I. SUMMARY OF THE EVIDENCE

The record shows that Banco Mexico Somex, S.N.C. ("the Bank") filed suit seeking to collect over $2 million from Mexico's Industries, Inc. ("Mexico's Industries") on twelve "Letras De Cambio" ("Letras").[1] These Letras purport to evidence an agreement between Mexico's Industries and Sombreros Azteca, S.A. de C.V. (Sombreros), whereby Mexico's Industries agreed to pay certain debts owed by Sombreros to the Bank.[2]

The evidence establishes that Sergio Herrera ("Herrera"), a Mexican businessman, is significantly involved with both Mexico's Industries and Sombreros. He is "Administrador Unico" (the highest title a person can hold in a Mexican corporation) and President of Sombreros. He is also the sole director and President of Mexico's Industries. He and his wife are the sole shareholders of Mexico's Industries, and he, along with his wife and mother, own nearly all the outstanding corporate stock of Sombreros.

The relationships and dealings between the Bank, Mexico's Industries and Sombreros, each transacting business either directly or indirectly in the United States and the Republic of Mexico, have led to the underlying suit. Specifically, the Bank (in Mexico) made loans to Sombreros, based on invoices, export requests, and shipper's export declarations representing goods shipped by Sombreros (in Mexico) to Mexico's Industries (in El Paso, Texas). From the above documents, a summary of the total loan amount was determined and payment requested in United States dollars.[3] Promissory notes called "pagares" evidenced the above loans, and were "to be used for payment." However, the Letras were additionally issued.

Sergio Herrera testified that the purpose of the Letras, which were not to be used for collections, was to provide the Bank with an internal record of the transaction. Herrera testified that the Letras were pre-printed forms and were presented to him in blank. He further testified that he was told by the Bank to sign both on the front and back of the blank document.[4] The first signature appears in the front lower right-hand corner where the drawer or maker would sign under "normal" circumstances. The second and third signatures are found on the reverse side of the Letras with one signature appearing in a box that bears the heading "Data and Signatures of Endorsements." The third and final signature appears under the typed endorsement of Sombreros. Herrera noted that at the time he executed the Letras, they were

---

1. "Letras de Cambio" are bills of exchange or drafts.

2. The record shows that Banco Mexico Somex, S.N.C. transacts business in the State of Puebla in the Republic of Mexico. Sombreros Azteca, S.A. de C.V. is a Mexican corporation whose principal place of business is in the Republic of Mexico. Sombreros manufactures straw hats, bags and other items for export to the United States. Mexico's Industries, Inc., a Texas corporation which transacts business in El Paso, Tex-as, is engaged in the business of importing Mexican manufactured goods for resale.

3. Mexico's Industries asserts that the loans were made in pesos. However, neither party has cited this Court to records evidencing exactly what form these loans were made in.

4. There is no question but that Sergio Herrera's signature appears on the Letras in three places.

otherwise blank and that there was no typewritten information anywhere on the Letras.

The evidence before this Court shows that the Letras, as they presently exist, contain the following information on their face: (1) a sum certain; (2) the date they are payable; (3) that they are payable to the order of Sombreros Azteca, S.A. De C.V.; (4) that Sombreros and Sergio Herrera are the drawers; and (5) that Mexico's Industries is the drawee. On the reverse side of the Letras appears the signature, i.e. endorsement, of Sergio Herrera along with an endorsement to pay to the Bank followed by the further endorsement of Sombreros and Sergio Herrera. The testimony of Herrera that the documents were otherwise blank at the time of execution was corroborated by Alan Keown, an expert documents examiner, who stated that the endorsement of Sombreros on certain Letras was indeed added **after** Mr. Herrera had originally signed the Letras. Finally, the evidence shows that the Bank took the Letras to Mexico's Industries, and Normando Garcia, an employee of Mexico's, signed the drafts on the blank marked "acep-to(amos)" [5]

On review, the Bank contends that the Letras are drafts that ordered Mexico's Industries, via the endorsement by Sombreros, to pay the amount of the draft at maturity to the Bank. Thus, according to the Bank, they were the holder in due course of a draft of which Sombreros was the drawer, and Mexico's Industries the drawee. In addition, the Bank contends that the signature of Normando Garcia constitutes acceptance of the draft by Mexico's Industries resulting in Mexico's Industries being primarily liable for payment.

The jury in the instant case found the Letras lacked the requirements of negotia-bility when they were originally delivered to the Bank, but nonetheless found in favor of the Bank and awarded it the sum of $2,149,872.44. The trial court found the jury's answers to be "possibly conflicting" and thereafter **conditionally** reconciled the conflict and entered judgment for the Bank.[6]

## II. *DISCUSSION*

In the instant case, the jury found the following: (1) the Letras De Cambio lacked all the essential elements of negotiability when "signed and delivered" to the Bank; (2) Sombreros endorsed the back of the instruments; (3) Normando Garcia had actual or apparent authority to accept the drafts; (4) the drafts were not materially altered without the authorization of Mexico's Industries after they were signed by Sergio Herrera; (5) the Bank was a holder in due course of the drafts; (6) Mexico's Industries was estopped from denying the drafts were accepted for payment; and (7) Mexico's Industries ratified the accepted-for-payment signature of Normando Garcia on each of the drafts.

Mexico's Industries assigns seventeen points of error to the judgment of the trial court. Insofar as most points of error complain of either the factual or legal sufficiency of the evidence, we will address the points in their order of significance as they relate to the validity of the underlying transaction.

In considering a "no evidence" legal insufficiency point, we consider only the evidence that tends to support the jury's findings and disregard all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965). If there is more than a scintilla of evidence to support the questioned finding, the "no evidence" point fails. *Worsham Steel Co. v. Arias,*

---

5. "Acepto" means "I accept," while "aceptamos" means "we accept." In the above commercial context, "acepto(amos)" means "I/we accept and we will pay at maturity".

6. The trial court stated the following in its judgment:

The Court further bases its judgment on the Jury's answers to all the questions submitted to them, not just their answer to any one particular question, and finds that all answers that support this judgment were supported by factually sufficient evidence. Furthermore, in the alternative, and only if necessary to support this judgment, the court states herein that it has disregarded the Jury's findings on Question One as having no support in the evidence.

831 S.W.2d 81 (Tex.App.—El Paso 1992, no writ); *Fuentes v. McFadden*, 825 S.W.2d 772 (Tex.App.—El Paso 1992, no writ).

A factual insufficiency point requires us to examine all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); *Oechsner v. Ameritrust Texas, N.A.*, 840 S.W.2d 131, 136 (Tex.App.—El Paso 1992, writ denied); *Chandler v. Chandler*, 842 S.W.2d 829, 832–33 (Tex.App.—El Paso 1992, writ denied). The reviewing court cannot substitute its conclusions for those of the jury. If there is sufficient competent evidence of probative force to support the finding, it must be sustained. *Oechsner v. Ameritrust Texas, N.A.*, 840 S.W.2d at 136; *Chandler v. Chandler*, 842 S.W.2d at 833. It is not within the province of the court to interfere with the jury's resolution of conflicts in the evidence or to pass on the weight or credibility of the witnesses' testimony. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792 (1951). Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508 (1947); *Oechsner v. Ameritrust Texas, N.A.*, 840 S.W.2d at 136; *Chandler v. Chandler*, 842 S.W.2d at 833.

■ In Points of Error Nos. Nine and Ten, Mexico's Industries asserts there was legally and factually insufficient evidence to support the jury's finding of estoppel. The jury specifically found "Mexico's Industries [was] estopped from denying that it accepted the drafts (the Letras De Cambo's [sic]) for payment." On review, the Bank argues that it relied on the drafts being accepted for payment *and* that the drafts were negotiable. However, in light of the jury's finding as to the issue of estoppel, we address only whether the Bank presented evidence on the elements of estoppel as it relates to acceptance.

■ In actions on negotiable instruments, estoppel may operate to preclude a party from setting up an otherwise available defense. *Brand v. Korth*, 128 Tex. 488, 99 S.W.2d 285 (Tex.Com.App.1936). To establish estoppel, it was incumbent upon the Bank to prove; (1) there existed a false representation or concealment of material facts, (2) made with knowledge, actual or constructive, of the facts, (3) the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; (4) it was made with the intention that it be acted on; (5) and the party to whom it was made must have relied or acted on it to his prejudice. *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 489 (Tex.1991); *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 932 (1952); *Riley v. Meriwether*, 780 S.W.2d 919, 926–27 (Tex.App.—El Paso 1989, writ denied).[7]

While the Bank argues that it relied on Mexico's Industries false acceptance of the drafts, a careful review of the record fails to reveal any evidence that would establish when Mexico's Industries purportedly accepted the Letras, such acceptance was done falsely. The question of whether Normando Garcia accepted the drafts is one of authority, not estoppel. Moreover, we find no evidence in the record that the Bank was without the means to discover whether the Letras were acceptable by Normando Garcia. Although we find no evidence in the record that the Bank was without the means to discover whether the Letras were acceptable by Normando Garcia, we find that such lack of evidence did not cause nor could it be reasonably calculated to have caused the rendition of an

---

7. Estoppel may also be established where a party, who has a right to accept or reject a transaction, takes or retains benefits thereunder. *Turcotte v. Trevino*, 499 S.W.2d 705, 716 (Tex. App.—Corpus Christi 1973, writ ref'd n.r.e.), *appeal after remand*, 544 S.W.2d 463, *reversed*, 564 S.W.2d 682. This "Quasi Estoppel" forbids a party from accepting the benefits of a transaction or statute and then subsequently taking an inconsistent position to avoid corresponding obligations or effects. *Matter of Davidson*, 947 F.2d 1294, 1297 (5th Cir.1991). However, because the Bank did not plead this form of estoppel, we address their cause of action according to the traditional elements of estoppel.

improper verdict, given the facts of the instant case. Tex.R.App.P. 81(b)(1). Accordingly, we sustain Points of Error Nos. Nine and Ten, but find such error to be harmless.

■ In Point of Error No. Six, Mexico's Industries assigns error to the trial court's submission of Question No. 7 on ratification. Mexico's Industries contends that ratification was not properly pleaded and that it was therefore improper to include this question in the charge.[8]

■ A trial court has great discretion in submitting broad-form jury questions. TEX.R.CIV.P. 277; *Mobil Chem. Co. v. Bell,* 517 S.W.2d 245, 256 (Tex.1974). This discretion is subject only to the requirement that the questions submitted must control the disposition of the case being **raised by the pleadings** and evidence and properly submit the disputed issues for the jury's determination. *Baker Marine Corp. v. Moseley,* 645 S.W.2d 486, 489 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.); *Texas Gen. Indem. Co. v. Villanueva,* 619 S.W.2d 15, 17 (Tex.Civ.App.—Corpus Christi 1981, no writ); *see also* TEX.R.CIV.P. 278.

The Bank points to the following passage to argue that ratification was pleaded:

> The Defendant cannot accept the benefits of the drafts and repudiate liability thereunder. Furthermore, without waiving the above, Sergio Herrera a/k/a Sergio Herrera Miranda, has imputed knowledge as to the validity of any and all signatures and such other matters as pled below.

■ Pleadings should give fair and adequate notice of the facts on which the pleader relies in order that the adverse party may properly prepare a defense.

*George A. Fuller Co. v. Carpet Services, Inc.,* 823 S.W.2d 603, 605 (Tex.1992); *Murray v. O & A Express, Inc.,* 630 S.W.2d 633, 636 (Tex.1982). According to established rules of civil procedure, pleadings shall "consist of a statement in plain and concise language of the plaintiff's cause of action or the defendant's grounds of defense." TEX.R.CIV.P. 45(b). Fair notice has been given if the pleadings are sufficiently specific so that an opposing attorney of reasonable competence can ascertain from the pleadings the basic issues of the controversy and the probable relevant testimony. *Estate of Menifee v. Barrett,* 795 S.W.2d 810, 812 (Tex.App.—Texarkana 1990, no writ).

■ Ratification may occur when a principal, though he had no knowledge originally of the unauthorized act of his agent, retains the benefits of the transaction after acquiring full knowledge. *Land Title Co. of Dallas v. F.M. Stigler, Inc.,* 609 S.W.2d 754, 757 (Tex.1980).

■ It is evident from a substantive reading of the Bank's pleading that ratification is never specifically mentioned. Ratification should be affirmatively pleaded. *Id.*[9] The Bank is forced to assert that the reference as set out above adequately pleads ratification. While this phrase may bear a striking resemblance to the second element of ratification, it also resembles a form of estoppel discussed earlier (i.e., "quasi estoppel" or "estoppel by acceptance of the benefits"). This coupled with the fact that the passages relied upon are found within a general pleading of estoppel, leads to the conclusion that ratification was not pleaded with sufficient particularity. Thus, it was error for the trial court to submit a question on this issue. *See* TEX. R.CIV.P. 301; *Cunningham v. Parkdale*

**8.** Although Mexico's Industries did not specially except to the Bank's pleadings and failed to object to introduction of ratification evidence, it did object to submission of the question. Thus, the issue was not tried by consent. *See Harkey v. Texas Employer's Ins. Ass'n,* 146 Tex. 504, 208 S.W.2d 919, 922–923 (1948). Moreover, the Bank did not seek a trial amendment to include ratification. Therefore, the issue before this Court is whether the Bank adequately pleaded

ratification in "Plaintiff's First Supplemental Petition." TEX.R.CIV.P. 67.

**9.** Pleading the actual legal terms, however, is not determinative. *See Earth Sciences, Co. v. Lindley International, Inc.,* 650 S.W.2d 217, 218 (Tex.App.—San Antonio 1983, no writ) (ratification adequately pleaded where plaintiff alleged necessary elements despite not specifically using legal term of ratification).

*Bank,* 660 S.W.2d 810, 813 (Tex.1983); *Purselley Industries Inc., v. Engle,* 717 S.W.2d 662, 664 (Tex.App.—Tyler 1986, ref'd n.r.e.) (an award of a judgment on a theory not pleaded is erroneous). Once again, although we find the trial court erred in submitting a jury question on the issue of ratification, we find that such error did not cause nor could it be reasonably calculated to have caused the rendition of an improper verdict, given the facts of the instant case. Tex.R.App.P. 81(b)(1); *Chemical Express Carriers, Inc. v. Pina,* 819 S.W.2d 585, 589 (Tex.App.—El Paso 1991, writ denied). Accordingly, Mexico's Industries' Point of Error No. Six is sustained. Although the above points of error have been sustained, the record before this Court may establish that the Letras were otherwise properly accepted, regardless of the presence of estoppel or ratification. Therefore, we address the remaining points of error.

In Points of Error Nos. Seven and Eight, Mexico's Industries challenges the legal and factual sufficiency of the evidence to support the jury's finding of ratification. Insofar as we have found that ratification was not properly pleaded, we find it unnecessary to address Points of Error Nos. Seven and Eight.

 In Point of Error No. Two, Mexico's Industries complains the trial court erred in submitting Question No. 3 dealing with authority and apparent authority.[10] Specifically, Mexico's Industries correctly points out that "apparent" authority was never pleaded. However, the record firmly demonstrates that the Bank alleged in its First Amended Original Petition that the drafts were accepted by Mexico's Industries "having its **duly authorized** officer and agent place its signature on the face of the instrument." [Emphasis added]. Moreover, Mexico's Industries does not assert that **actual** authority was not pleaded. And, in their third and fourth points, Mexico's Industries does assert there was legally and factually insufficient evidence to support submission of either actual or apparent authority. Thus, we will first address whether there is legally and factually sufficient evidence of actual authority.

 Actual and apparent authority are distinct concepts. In general, actual authority means authority that the principal intentionally conferred upon the agent, intentionally allowed the agent to believe that he possessed, or by want of due care allowed the agent to believe he possessed. *Currey v. Lone Star Steel Co.,* 676 S.W.2d 205, 209–10 (Tex.App.—Fort Worth 1984, no writ). Thus, actual authority includes *both* express and implied authority. *Morey v. Page,* 802 S.W.2d 779, 784 (Tex.App.—Dallas 1990, no writ). Express authority exists where the principal has made it clear to the agent that he wants the act done under scrutiny to be done; implied authority exists where there is no proof of express authority but appearances justify finding that in some manner the agent was authorized to do what he did. *City of San Antonio v. Aguilar,* 670 S.W.2d 681, 683 (Tex.App.—San Antonio 1984, writ dism'd).[11] "Thus both actual and apparent authority for their creation on some manifestations, written or spoken words or conduct *by the principal* communicated either to the agent (actual authority) or to the third party (apparent authority)." *Currey,* 676 S.W.2d at 210. The Bank does not point to any evidence of express authority regarding "acceptance"; thus the issue becomes whether there existed implied *actual* authority, as determined either from the conduct of the parties or from the circumstances surrounding the transaction in question. *Johnson v. Holly Farms of Texas, Inc.,* 731 S.W.2d 641, 645 (Tex.App.—

**10.** Question No. 3 read as follows;
Do you find that Normando Garcia had authority, or apparent authority to accept the drafts (Letras de Cambio) for payment on behalf of Mexico's Industries, Inc.?

**11.** Apparent authority, on the other hand, is created as to a third person by the conduct of the principal which, reasonably interpreted, causes the third person to believe the principal consents to the act done on his behalf by the person purporting to act for him. *Cactus Pipe & Supply Co., Inc. v. M/V Montmartre,* 756 F.2d 1103, 1111 (5th Cir.1985); *Verna Drilling Co. v. Parkes–Davis Auctioneers, Inc.,* 659 S.W.2d 877, 880 (Tex.App.—El Paso 1983, writ ref. n.r.e.).

Amarillo 1987, no writ). The evidence establishes Normando had actual authority to accept the drafts.

The evidence at trial reveals that Normando Garcia had a significant amount of authority while employed by Mexico's Industries. He was in charge of monitoring the trucks that were used in importing the goods for delivery to the company. He was likewise in charge of the trucks tasked with delivering the imported goods to specific customers. Further, Garcia did have express authorization to sign Mexico's Industries' checks, although he could only do so jointly.[12] Most indicative of Garcia's authority was evidence showing that Mexico's Industries authorized him to place a purchase order for merchandise totalling $259,000 on behalf of Mexico's Industries from another of Herrera's Mexican companies. We find the above evidence to be sufficient under both evidentiary standards to show that Mexico's Industries created in Normando Garcia, by want of due care, *implied actual authority* to accept the drafts. Having found sufficient evidence of Garcia's implied actual authority, it is unnecessary to address whether the allegations of apparent authority were properly pleaded and whether there was sufficient evidence of such authority. Points of Error Nos. Two, Three and Four are overruled.

■ In its fifth point of error, Mexico's Industries assigns as error the trial court's failure to submit a question inquiring whether Mexico's Industries in fact accepted the Letras. However, we find the jury determined the issue of acceptance when it answered the jury question that pertained to Normando Garcia's authority.[13] Once the trial court submits questions on controlling issues, it is not error for the court to refuse to further submit different questions that are shades of those same issues. *See Prudential Insurance Company of America v. Tate*, 162 Tex. 369, 347 S.W.2d 556, 559 (1961); *Haney v. Purcell Co., Inc.*, 796 S.W.2d 782, 785 (Tex.App.—Houston [1st Dist.] 1990, writ denied); *Jacobini v. Hall*, 719 S.W.2d 396, 400–401 (Tex.App.— Fort Worth 1986, writ ref'd n.r.e.). We find that the trial court did not err in refusing to submit a shade of an issue already submitted. Accordingly, Point of Error No. Five overruled.

■ In Point of Error No. Eleven, Mexico's Industries complains the evidence is factually insufficient to support the jury's finding that the Letras, or drafts were endorsed by Sombreros Azteca.

The evidence presented on this point consisted primarily of the Letras themselves. As stated above, on the back of each draft the "signature" of Sombreros is typed in all caps as appears as follows: "SOMBREROS AZTECA, S.A. De C.V." The above endorsement is preceded by the words "PAGUESE A LA· ORDEN DE BANCO MEXICANO," i.e., pay to the order of the Bank. While Sergio Herrera testified that when he signed the drafts they were blank, and while such testimony was corroborated by the documents expert to some extent, the evidence is nevertheless conflicting. Resolution of conflicts in the evidence lies with the jury. *Montgomery Ward & Co.*, 204 S.W.2d at 508; *Oechsner v. Ameritrust Texas, N.A.*, 840 S.W.2d at 136; *Chandler v. Chandler*, 842 S.W.2d at 833. Point of Error No. Eleven is overruled.

■ In Point of Error No. Fifteen, Mexico's Industries asserts the jury's finding that the drafts were **not** materially altered to be against the great weight and preponderance of the evidence.[14] The evidence as

---

**12.** The documentary evidence presented by the Bank (consisting of a number of checks made payable to Sombreros Azteca and endorsed to the Bank) established that Normando Garcia's signature was always accompanied by that of some other person.

**13.** As set out above, the jury answered "Yes" when asked whether Normando Garcia had authority to accept the drafts on behalf of Mexico's Industries.

**14.** The question as posed to the jury was as follows:

> After the drafts (Letras de Cambio) were signed, were they materially altered in any way by Banco Mexico Somex, S.N.C., with any, fraudulent intent, and without authorization of Mexico's Industries, Inc.?
> *No.*

outlined above establishes that despite Sergio Herrera's contention that he signed the notes in blank, the instruments as they now exist contain the requisite elements of negotiability. Moreover, Jaime Obregon, custodian of the Bank's records, testified, without objection, that the drafts were complete when he reviewed the files. Finally, there is evidence that Sergio Herrera was not "surprised to see the drafts" when they were presented to him for payment. Although he did refuse payment, Obregon, who presented three of the drafts, stated that Herrera was given an opportunity to review and inspect the drafts and never questioned the amounts or due dates of the drafts or Normando Garcia's authority to accept them. Joseph Ray Medellin, who presented the last nine drafts, further testified that Herrera never questioned amounts, due dates, or the validity of **any** of the signatures appearing on the Letras. Given the above, we conclude that the finding of the jury that the Letras were **not** materially altered is not against the great weight and preponderance of the evidence. Point of Error No. Fifteen is overruled.

■ In Points of Error Nos. Twelve and Thirteen, Mexico's Industries complains that the evidence was legally and factually insufficient to support the jury's finding that the Bank was a holder in due course. "A holder in due course is one who takes the instrument (1) for value; and (2) in good faith; and (3) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person." Tex.Bus. & Com.Code Ann. § 3.302(a) (Tex.UCC) (Vernon 1968).

Having held above that the jury's findings of no material alteration and that the drafts were endorsed by Sombreros, are not against the great weight and preponderance of the evidence, Mexico's Industries' assertion that Sergio Herrera was somehow fraudulently induced into signing the Letras is without merit. Once again we note that the jury heard the evidence pertaining to Herrera's signing of the documents as well as evidence of his acceptance of the documents. This Court will not upset the jury's determination that the Letras were properly completed after being delivered to the Bank and that the Bank was therefore a holder in due course. Other than the assertion that Herrera was fraudulently induced to sign the above documents, Mexico's Industries does not argue that the Bank is otherwise not a holder in due course. Consequently, Points of Error Nos. Twelve and Thirteen are overruled.

In Point of Error No. Sixteen, Mexico's Industries asserts the trial court erred in refusing to submit a question on whether there was consideration between Mexico's Industries and the Bank on the Letras. However, due to the status of the Bank as a holder in due course, the question of consideration need not be addressed. Lack of consideration is not a valid defense against a holder in due course. Tex.Bus. & Com.Code Ann. §§ 3.305 and 3.408 (Tex. UCC) (Vernon 1968). Point of Error No. Sixteen is overruled.

In Points of Error Nos. One and Seventeen, Mexico's Industries asserts as error the trial court's "conditional reconciliation" of the jury's "possibly" conflicting findings. Having held that the above contested jury's findings are in fact supported by the evidence, we find no conflict in need of reconciliation. Accordingly, Points of Error Nos. One and Seventeen are overruled.

In Point of Error No. Fourteen, Mexico's Industries complains of the finding of the jury regarding damages. The record establishes that the amount of damages awarded by the jury represents the total face value of the Letras in question and is equivalent to the dollar value of the goods shipped. We find sufficient evidence to support the jury award of damages and overrule Point of Error No. Fourteen.

In a single cross-point, the Bank urges this Court to award it the sum of $10,000 as reasonable attorney's fees. The record in the instant case shows that the parties stipulated to the recovery of reasonable attorney's fees for trial of the case and in the event of appeal. These fees were granted in favor of the Bank by the trial court in its judgment. We affirm the judgment of the trial court, hence, the attorney's fees granted in the judgment of the

trial court are likewise affirmed. The single cross-point is overruled.

Having sustained Appellant's Points of Error Nos. Six, Nine and Ten, but finding the error harmless, and overruling Appellant's remaining points, as well as Appellee's sole Cross–Point, the judgment of the trial court is affirmed.